## Richmond.

TAYLOR & ALS. V. BOARD OF SUPERVISORS.

NOVEMBER 7th, 1889.

1. CONSTRUCTION OF STATUTES—*Acts* 1881-'82, *page* 467—*Case at bar.*—In its order made under said act, and directing the submission of the question whether or not the county should subscribe to the stock of a company proposing to build its railroad through the county, the county court failed to state the maximum of subscription and the number of miles the road was to be built through the county : *held,* such failure does not invalidate the order nor the proceedings under it.

2. AMENDMENTS TO CHARTER—*Subscriptions.*—Subscriptions to a company's capital stock are not released by unacted-upon amendments to its charter.

Appeal from decree of circuit court of Petersburg rendered February 21, 1888, dissolving an injunction which had been awarded to D. R. Taylor and others, citizens and tax-payers of Greenville county, enjoining the board of supervisors of said county from issuing any bonds in payment of its alleged subscription to the Atlantic & Danville railroad company, and dismissing the bill with costs. From this decree complainants appeal. Opinion states the case.

*George S. Bernard, C. F. Collier, Tredway & Barham,* and *Wm. E. Cameron,* for the appellants.

*R. B. Davis* and *J. M. Muller,* for the appellees.

HINTON, J., delivered the opinion of the court.

This suit was originally instituted by the complainants, who are citizens and tax-payers of the county of Greenville, in the circuit court of that county, but was subsequently removed, by consent of parties, to the circuit court of the city of Petersburg.

The material facts of the case are as follows: The legislature of Virginia, by an act approved April 21, 1882, (see Acts 1881–82, p. 467,) chartered the Atlantic & Danville railroad, and authorized it to construct a railroad from some point on the James river, in Surry county, to the city of Danville. By the ninth and tenth sections of the charter, the counties through which the proposed route of the road was to pass, Greenville county among the number, were authorized to subscribe, " according to the forms prescribed by the Code of Virginia of 1873," to the capital stock of the company, " to an amount not exceeding thirty-five hundred dollars per mile for each and every mile of railroad the company might build within the county." In October, 1882, the county court of Greenville county, acting in pursuance of the power supposed to have been ordered by the charter, entered an order reciting the provision of the charter *in totidem verbis*, directing the officers to open a poll and take the sense of the voters of the county upon the question " whether the board of supervisors of this county shall subscribe to the capital stock of the said Atlantic & Danville railway company the sum of $3,500 per mile, as above recited." The result of the vote being in favor of the subscription, the board of supervisors, on the 12th day of May, 1883, entered an order upon their records subscribing the sum of $3,500 per mile for each mile of the main line of the railroad the company should construct within the county, and appointed an agent to make the subscription upon the books of the company; and the matter was certified to the company. Afterwards, to-wit, on the 6th day of June, 1883, the board entered another order, revoking the former order as having been " inadvertently entered," against the protest of the company, and subsequently ordered a definite sub-

scription of $10,000. These orders were in turn rescinded, and the original order, subscribing $3,500 per mile was re-entered, and the subscription was actually made in pursuance thereof upon the books of the company. Subsequently, in 1886, (see Acts 1885–86, p. 214,) the legislature amended the charter of the company, allowing it to change its gauge from a narrow to the standard gauge, to build a branch road from a point on its main line to Portsmouth, and to build, purchase, and operate vessels on the waters of the commonwealth in connection with its road, etc. The road was built, as contemplated by the charter, from its starting point, in Surry county, to Belfield, in Greenville county, when, in accordance with the terms of the subscription, the company made application to the board of supervisors to issue the bonds in payment of the subscription for the number of miles of road which, by the report of the commissioner appointed by the county court of Greenville county, in pursuance of the directions of the charter, appeared to have been built in the county; but the board of supervisors refused to issue the bonds, upon the ground that they were informed by counsel that the original subscription was void, and created no liability upon the county. In February, 1887, this suit, to restrain the board of supervisors from ever issuing the bonds of the county, was instituted. The grounds upon which this application for a perpetual injunction was rested, are virtually the same as those upon which this appeal is sought to be maintained. They are these: *First*, that the order of the county court, at the October term, 1882, ordering an election to be held to take the sense of the qualified voters of the county upon said subscription, and all subsequent proceedings had in pursuance thereof, are null and void, because the order of the county court directing the submission of the question whether there should be a subscription or not to the vote of the people of the county, neither specifies the maximum amount proposed to be subscribed, by naming the particular sum, nor does it,

by giving both the number of miles to be built and the maximum amount per mile proposed to be subscribed, afford the voters the means of estimating what the aggregate amount would be; and, *secondly*, that, if all of said acts and proceedings were valid, yet the company, by accepting and acting upon the amendment to the charter heretofore mentioned, whereby enterprises materially different from that contemplated by the original charter, had released the county as a subscriber.

But we do not think either of the objections tenable. As to the first ground of objection, the argument is that the failure to state the maximum amount proposed to be subscribed, or to do what was equivalent thereto, namely, to give the number of miles, and the amount to be subscribed per mile, from which the gross amount of the subscription might be arrived at, is such a violation of that provision of the charter authorizing the subscription to be made according to the forms prescribed by the Code of 1873 as that it makes not only the order, but all the proceedings founded thereon, absolutely null and of no effect. But this suggestion is based upon a plain misconception of the purpose the legislature had in view in making this enactment. The legislature was not dealing here with the ordinary case of a subscription by a county to some work of internal improvement, where the precise amount to be subscribed might be readily ascertained in advance; but it was dealing with a case where it was impracticable, perhaps, I might say, impossible, for either party to accurately estimate, at the time the vote was to be taken, either the precise sum that would be required or the exact number of miles of road that would be built. It doubtless thought that the interest of the county would be sufficiently protected by limiting the subscription to the sum of $3,500 per mile, and leaving the number of miles to be fixed by the company when it should finally come to build the road. Now, if this was the legislative intent, and we think it was, is it not clear that, when it pro-

vided that the subscription should be made according to the forms prescribed by the Code of 1873, it did not mean that the order of submission should state either the gross amount that was to be subscribed, or *data* from which the gross amount might be definitely ascertained? The provisions of sec. 62, ch. 61, Code 1873, seem to have been mainly designed to give to the people a definite idea of what is proposed to be done in behalf of the county, and to fix a limit beyond which generally the power to subscribe shall not be exercised. These objects, however, the legislature has evidently seen fit to accomplish, so far as they were practicable, by the provisions of this charter, and we must hold, therefore, that that section of the Code has no application to the case. But what, then, are the "forms prescribed" by the Code of 1873, which the charter directs shall be observed in making this subscription? Why, manifestly, the forms given in secs. 65, 66, ch. 61, Code, under the heading, "If subscriptions be voted for, how it is to be made," etc. In other words, the forms prescribed by the Code of 1873, according to which the subscription is to be made, are those which are to be observed in making the subscription after the voters have declared at the polls that the subscription shall be made. That these are the forms directed to be observed in making the subscription, is made even more clear if we simply reflect that the only effect of a literal compliance with the provision of sec. 62, requiring that the maximum amount to be subscribed shall be stated, would have been "to empower the board of supervisors to act in the premises," and the subscription would then have remained to be made according to the forms prescribed by law. *Chalmers* v. *Funk*, 76 Va., 717, 722; *Matthews' case*, 18 Gratt., 989; Sedg. St. & Const. Law, 194.

Upon the second point we think we need say but little, for, if we concede, for the sake of the argument, that the amendments complained of are material, the facts agreed show that they have not been acted on by the company, and so neither

the county of Greenville nor its citizens can possibly have been injured thereby; and in such case it is well settled that the subscriber is not released. Pierce, R. R. 70; 1 Wood, Ry. Law, 104, and cases cited. The decree appealed from is right, and must be affirmed.

DECREE AFFIRMED.