# Richmond.

POWELL V. SUPERVISORS OF BRUNSWICK COUNTY.

January 28th, 1892.

1. TITLE OF ACTS — *Constitution—Act of April 21st, 1882.*—The intent of Article V, section 15, Constitution of Virginia, was to prevent in one act, the union of objects having no connection, and is effected where an act has but one general aim fairly indicated in its title, as "to incorporate a railroad company"; and such act may embrace the necessary details, such as authorizing counties to aid by their subscriptions in its construction, and the like. And the act approved April 21st, 1882, entitled "An act to incorporate the A. & D. Railroad Company," is not repugnant to said section. *Taylor* v. *Supervisors Greensville Co.,* 86 Va. 506.

2. CHARTER.—*Amendments—County subscription.*—When under said act a county subscribes, it and its citizens must be presumed to have acted on the expectation that amendments to the charter would be made as required by the circumstances.

Appeal from decree of circuit court of Brunswick county, rendered February 26th, 1890, in a chancery suit instituted by R. S. Powell and others, citizens and tax-payers of said county, against the board of supervisors thereof and the Atlantic and Danville Railroad Company. The object of the suit was to enjoin said board from issuing any more of the bonds of said county, and the said company from disposing of such of said bonds as may have been already issued, as a subscription to said company. The court below having dismissed the bill at the hearing of the cause, the plaintiffs appealed. Opinion states the case.

*E. P. Buford, G. P. Barkham* and *J. F. West,* for appellants.

*Walke & Old*, and *Davis & McIlwaine*, for appellees.

LACY, J., delivered the opinion of the court.

The bill was filed by the appellants in the circuit court of Brunswick county on the 25th day of March, 1889, against the board of supervisors of said county and their successors in office to enjoin them from issuing the bonds of the county of Brunswick as a subscription to the Atlantic and Danville Railroad Company thereafter, and to enjoin and restrain the said " The Atlantic and Danville Railroad Company " from disposing or parting with the bonds of the said county, theretofore issued on subscription to the said corporation, and now in the hands of and in the possession of the said company, the said plaintiffs suing on behalf of themselves and all others, tax-payers of the said county of Brunswick, who will make themselves parties to this suit, and contribute to the costs of the same. The county bonds in question were issued and to be issued by virtue of an act of the general assembly of Virginia, entitled " an act to incorporate the Atlantic and Danville Narrow-Gauge Railroad Company, approved April 21st, 1882." The railway authorized to be constructed and operated under this act of assembly was to have its eastern terminus at the most available point at deep water on James river, within the county of Surry, and its western terminus at a point at or near the town of Danville, its line to pass through or near the town of Waverly, in the county of Sussex; thence by the most direct and practicable route to a point at or near the town of Belfield, in the county of Greenesville; thence by the most practicable route to a point at or near Brunswick Courthouse; thence by the most practicable route to a point at or near the town of Boydton, in the county of Mecklenburg, and thence by the most practicable route to its terminus. By virtue of its charter and the general laws of the state upon the subject, the said corporation made an application to the county court of Brunswick county to take the sense of the qualified voters of the said

county upon the question of making a subscription to the said corporation by the said county; and on the 29th day of March, 1883, an order was rendered by the said court, directing the question to be submitted to the qualified voters of said county on the fourth Thursday in May, 1884, which election was held, and the commissioners appointed to canvass the returns reported to the court that the election had been carried in the manner prescribed by law, which fact was certified to the said board of supervisors, and a subscription was made of $3,500 per mile of the main line which should be constructed within the limits of the said county, and an agent appointed to make the subscription on the books of the company in due form, and bonds were issued for subscription to the said company for five miles of said road at $3,500, and the said corporation is constructing a road of standard gauge; and application has recently been made to the said board of supervisors to issue bonds to the said company for four miles of additional railroad, claimed to have been constructed in the said county, at $3,500 per mile, and such application is now pending before the said board of supervisors.

The bill alleges that the said subscription is illegal and void, and that the further issue should be enjoined; that the election aforesaid was illegal and void; that the voters who voted for the subscription were induced to do so by fraudulent representation on the part of the then president and vice-president; that the Meherrin river divides the county into two parts, one on the north and the other south of said river, and the voters resident in these sections were severally persuaded—the voters on the north side that the road would be constructed on the north side, and the voters on the south side, on the other hand, that it would be constructed on the south side of the river; that the said election was void for other reasons; that the voters did not vote understandingly, and the election was not properly conducted; that the said election, for these irregularities, was contested before the county court upon the peti-

tion of citizens, as required by law, and dismissed by the county court without passing upon the merits, and that the subscription was void because the order under which it was conducted did not state the maximum amount to be voted for, but only the rate per mile; that the act of assembly incorporating the said railroad was unconstitutional and void, because the law embraced more than one object, and because the objects of the act are not expressed in the title as required by section 15, Art. V, of the Constitution of Virginia; that the act is also void, being repugnant to the twelfth, fourteenth, and fifteenth sections of Article X, of the Virginia Constitution; that a state cannot authorize one of its sub-divisions to do what the state has not the power and authority to do as a whole; that the requisite amount of $50,000 has not been subscribed, nor the five per centum thereof paid up by persons other than railroad and internal-improvement companies, and the corporation has no legal existence; that the requisite amount of $20,000 has not been deposited with the treasurer of the commonwealth, as required by the act of incorporation; that the subscription of $3,500 per mile is greatly in excess of the amount in the aggregate allowed by law for the subscription, being in excess of twenty cents upon every $100 in value of the property of the county assessed for taxes; that the subscription on the part of the county of Brunswick, as alleged, was upon a narrow-gauge railroad, whereas, subsequently, the corporation has procured an amendment to its charter, and is, accordingly, now a standard-guage road, which, being more expensive to construct, has destroyed the value of the county stock; and it (the said corporation) was authorized by the said amendment also to construct a branch road to Portsmouth or Norfolk, on Elizabeth river, without the consent or knowledge of the said county, and to build piers, wharves, store-houses, &c., in connection with its said railroad; and Portsmouth had voted a subscription of $150,000, and is constructing its road in violation of its original charter from Portsmouth to Danville; that

the said company has mortgaged its road in the sum of $16,000 per mile; that the cars are hired from car-trust companies, and that the road is being constructed in the most careless and negligent manner, and the bonds of the road held by the county are not worth twenty-five cents on the dollar, and are daily diminishing in value, and will soon be worthless. The injunction prayed for was awarded according to the prayer of the bill.

The defendant railroad company demurred and answered, and denied the allegations of the bill as to the illegality of the election, and responded that that question had been heard and determined in the mode prescribed by law, and could not be here again inquired into, and denied that any fraudulent practices on their part had been in any wise employed; that the railroad had been built in the usual and proper mode, and by lawful authority; that the gauge of the road had been changed by act of assembly.

In reply to all the allegations of the bill that the county court failed to state the maximum amount proposed to be subscribed, as required by section 62 of chapter 61 of the Code; that the act of incorporation was void as repugnant to the constitution of the state; that the subscription is void, because in excess of the amount allowed by law, averred that all these questions had been settled adversely to the complainant in this court by the late case of *Taylor* v. *The Board of Supervisors of Greensville County*, 86 Va. 506, where the same questions were raised as to this charter; admitted the mortgage alleged to been placed on the road by the bill, but denied the right of the complainants to .object to that, they not being members of the corporation in any way. The circuit court, coming to consider the case upon the bill and exhibits, demurrer and answer and exhibits, dismissed the bill, and the complainants appealed to this court, where errors are assigned according to the allegations of the bill.

The case of *Taylor* v. *The Board of Supervisors of Greensville County, supra,* was a controversy arising concerning this same

railroad in its construction through the county of Greensville; the identical questions raised here were raised there as to the irregularities of the organization and the subscription of that county, and especially the excess of the subscription in the aggregate, when computing it at the sum of $3,500 per mile, as compared to the provisions of the general law, as set forth in section 62 of chapter 61 of the Code of 1873. But Judge Hinton sufficiently disposes of this objection and apparent difficulty by pointing out that the proceedings here were by virtue of a special act of assembly upon this very subject, passed not only subsequently to the Code, but enacted to govern this particular case. The questions raised as to the election are considered and disposed of there, and furnish reasons satisfactory as to this case.

As to the amendments to the charter, the question was not considered, as the amendments had not been acted upon by the company. But we perceive no difficulty upon that subject, the said amendments having been now acted upon. We are of the opinion that the regulations concerning this work of internal improvement are subjects within the proper control and supervision of the legislature; and, when the county of Brunswick subscribed to this road, it, and all the citizens thereof, must be taken to have acted with reference to the fact that the charter was liable to amendment and change, as occasion should require, under the general law. It does not so appear by the record here, but in argument it is conceded, and there is filed with the briefs a written agreement arrived at between the parties in this case, by which, after the decision of this court in the case of *Taylor* v. *Board of Supervisors*, *supra*, the parties compromised their dispute herein, as of February 24th, 1890, by which " this suit was to be dismissed, and the county bonds issued at once, bearing interest, as before, from date, the railroad to give up to the county in bonds $3,500." Two days after, on the 26th of the said February, 1890, the decree complained of was entered in accordance with this

agreement, and the suit dismissed, but no consent appears as endorsed upon the decree. The bonds of the county were thereupon issued, no person appearing to further object, and they were put upon the market and sold, and are now in the hands of third persons for value. Subsequently this appeal is taken, and the objection made that the charter of this company is void, because repugnant to the Constitution of Virginia, which provides that "no law shall embrace more than one object, which shall be expressed in its title." All the other questions appearing to have been expressly considered, as stated already in the case of *Taylor* v. *Board of Supervisors of Greensville County, supra*. And it is claimed, in support of that contention, that the constitution is violated here in this regard, because the act embraces more than one object, and because only one object appears in the title, and the act has more than one. Article V, section 15, of the Constitution of Virginia, provides that "no law shall embrace more than one object, which shall be expressed in its title." There was no design by this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number, but the framers of the constitution meant to require that in every case the proposed measure should stand upon its own merits, and that the legislature should be fairly satisfied of the design when required to pass it (*Sun Mut. Ins. Co.* v. *Mayer, &c.*, 8 N. Y. 253; *People* v. *Mehaney*, 13 Mich. 494); that neither the members of the legislature nor the people should be misled by the title. And, as has been said, the intent of this provision of the constitution was to prevent the union in the same act of incongruous matters and of objects having no connection and no relation. And with this it was designed to prevent surprise in legislation by having matter of one nature embraced in a bill whose title expressed another. *State* v. *County Judge of Davis County*, 2 Iowa, 282.

And Judge Cooley says it may be assumed as settled that the purpose of these provisions was—first, to prevent hodge-

podge or log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted; and third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire. The general purpose of these provisions is accomplished where a law has but one general object, which is fairly indicated by its title.

To require every end and every means necessary or convenient for the accomplishment of the general object, to be provided for by a separate act, relating to that alone, would not only be unreasonable, but would actually render legislation impossible. Thus an act entitled an act to provide a charter for a city or town would, by such title, give notice that many details were of necessity embraced in the body of the act not specially mentioned in the title, and an act to incorporate a railroad company would be expected, without other title, to provide for the manner of taking subscriptions to the stock. The generality of a title is no objection to it, so long as it is not made a cover for legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection.

An act to incorporate a railroad company may authorize counties to subscribe to its stock, or otherwise aid the construction of the road, which has been held under a constitution which requires the law to contain but one object and matters properly connected therewith (*Gabbert* v. *Railroad Co.*, 11 Ind. 365), and also where the law was simply required to embrace but one object. *Guilford* v. *Cornell*, 18 Barb. 640.

We are of opinion that the act in question, having for its object the incorporation of a railroad company, embraced only such objects as were connected with and in furtherance of the

main general object of the act; that in such an act it should be provided that subscriptions to stock should be taken, and prescribe the mode, was to be expected, and was indeed suggested by the general object, because railroads are built in that way and can be built, generally speaking, in no other way. That counties should be authorized to subscribe is neither unusual nor incongruous. Such provisions are very common, and not incongruous, because in aid and furtherance of the general object.

For the foregoing reasons, without going into a general examination of the numerous cited cases on the subject, we are of opinion that the law in question is not repugnant to the clause of our constitution cited above   And, for the reason stated, we are of opinion that the amendments effected in the charter did not render it void, nor injuriously affect the rights of the appellant, and for the reasons stated in the opinion of Judge Hinton, in *Taylor* v. *Supervisors, &c., supra.* On all other questions we of opinion to affirm the decree appealed from.

DECREE AFFIRMED.