STATE, APPELLANT, *v.* MITCHELL, RESPONDENT.

[Submitted October 15, 1895.   Decided October 21, 1895.]

CONSTITUTIONAL LAW—*Title of act—Amendment of gambling law.* –Chapter IX of the proposed Penal Code of 1895 (§§ 360-367) entitled "Gaming." and prohibiting the same, having been stricken out by the legislature and prior laws authorizing certain gambling games reenacted in lieu thereof, which were annexed to .chapter VIII of the Penal Code, entitled "Lotteries," as sections 357-369a, the act of February 28, 1895, entitled "An act to amend chapter IX of the Penal Code of the state of Montana," and containing provisions striking out said sections 357-369a and substituting a section prohibiting all gambling, is in conflict with section 23, Article V of the constitution, providing that "no bill shall contain more than one subject which shall be clearly expressed in its title," since, at the time of the passage of said act of February 28th there was no chapter IX concerning gaming in the Penal to be amended, and as the other cha pters numbered IX in said Code pertained to other subjects there was nothing in the title of the bill to indicate to which one, if either, of the three existing chapters it was an amendment.

*Appeal from First Judicial District, Lewis and Clarke County.*

PROSECUTION for violation of section 600, chapter IX of the Penal Code prohibiting gambling.   The defendant was tried before BLAKE, J. and acquitted.   Affirmed.

*Henri J. Haskell,* Attorney General, for the State, Appellant.

*B. P. Carpenter* and *Toole & Wallace,* for Respondent.

The Constitution, section 12, article VII, declares that acts approved by the governor do not become laws until signed by him.   House bill 35, then, never became a law until February 19, 1895, and with reference to other acts passed at the Fourth session, it (House bill 35) must be deemed to have been passed on the last day of the session.   (Section 5160, Political Code.)   Senate bill 48, then, introduced February 4, 1895, was, when introduced, a bill to amend another bill, which had not yet become a law, and, as such, was nugatory and ineffectual.   (*State* v. *Benton,* 51 N. W. Rep. 141; *Louisville Co.* v. *City,* 25 N. E. Rep. 962; *Wall* v. *Garrison,* 19 Pac. Rep. 469.  *Harland* v. *Territory,* 13 Pac. Rep. 453; *People, etc.,* v. *Hills,* 35 N. Y. 449.)

That laws, and not bills, are the subject of amendment, is practically recognized by section 25, article V, of the Constitution, which reads: "No law shall be revised or amended," etc.; and, while it has been held that a statute or law, to be amended, may be the subject of an amendatory act (*People* v. *Parven*, 14 Pac. Rep. 783; *People, etc.*, v. *Fleming*, 3 Pac. Rep. 72), it never has been held that a mere bill in process of passage may be the subject of an amendatory act. In fact, changes in a bill are made by amendments offered to the bill before its passage, not by other acts of the same legislature. Senate bill 48 was not a general appropriation bill, nor a bill for the general revision of the statutes. Therefore its subject must be clearly expressed in the title. (Constitution, § 23, art. V.) The word "bill," as used in this provision of the Constitution, is held to be synonymous with "law" or "act." (*Durkee* v. *Janesville*, 26 Wis. 700, 702; *Hotchkiss* v. *Marion*, 12 Mont. 218, 225, 226.)

On January 31, 1895, five days before Senate bill 48 was introduced, House bill 35 had passed both houses by final vote, and title had been finally agreed to. The enrolled bill contained many chapters IX, *ergo:* the title utterly failed to express a subject because it did not point out which particular chapter nine was referred to. The reference to the other act must be clear and specific. (*People* v. *Parvin*, 14 Pac. Rep. 783, 785; *People* v. *Hills*, 35 N. Y. 452.) Again, there was no chapter IX relating to gambling in the enrolled bill. "And you cannot look beyond the enrolled bill for the terms of an act." (*State* v. *Swift*, 10 Nev. 176, 200, and cases in brief and opinion; *State* v. *Jones*, 6 Wash. 452; *Field* v. *Clark*, 143 U. S. 649; *Board* v. *Aspen Co.*, 32 Pac. Rep. 718; 23 Am. & Eng. Enc. of Law 202.) The other chapters IX in the enrolled bill call attention to entirely different subjects, while the *true* subject must be expressed. (*People* v. *Hills*, 35 N. Y. 453; *Clark* v. *Board of Commissioners*, 39 Pac. Rep. 225.) So the subject must be *clearly* expressed in the title. (*Davis* v. *State*, 61 Am. Dec. 343, note; *People* v. *Banks*, 67 N. Y. 572.) *Ergo:* a reference to any of the various chapters

"IX" that were in the enrolled bill would have called attention to an entirely different subject.

Again, even had there been a reference to a specific chapter, identified by its title and part in which it appeared, this would not make the title good, because reference to a specific chapter alone is held not to be a sufficient statement of the subject. (*People* v. *Hills*, 35 N. Y. 452; *Tingue* v. *Village, etc.*, 101 N. Y. 294, 303.) The legislature, as if recognizing this construction, has provided "in amending" for reference to "a section." (Sec. 23, Penal Code.) California holds that to constitute a reference to the subject in the title requires a reference to a specific section and a statement of the object. (*S. F., etc., R. R. Co.* v. *State Board*, 60 Cal. 29, 30; *People* v. *Dobbins*, 14 Pac. 860.) And has held that a failure to name the Code, though the sections be named, made the title fatally defective. (*Leonard* v. *January*, 56 Cal. 3.) Washington holds a reference to a specific section of a given act, without further reference to the object, bad. (*Harland* v. *Territory*, 13 Pac. Rep. 454, 457, 459, affirmed in *Rumsey* v. *Territory*, 21 Pac. Rep. 152. See, also, *The Borrowdâle*, 39 Fed. 380; *Tingue* v. *Village*, 4 N. E. Rep. 625; *Corn Bank* v. *Blye*, 101 N. Y. 303.) A title and act regulating street assessments was held bad because the act related to one town, and the title failed to mention the town. (*Durkee* v. *Janesville*, 26 Wis. 702; *People* v. *Hills*, 34 N. Y. 449; *People* v. *O'Brien*, 38 N. Y. 194.)

While sections are referred to in the body of the bill, they are not referred to in the title, and the body cannot be resorted to aid the title; it must be complete in itself. The court cannot, in any way, enlarge the scope of the title. (*Board* v. *Aspen Co.*, 32 Pac. Rep. 718.) Again, this title was to amend, and it will not authorize the express repeal of the law licensing gambling. (*Callahan* v. *Jennings*, 27 Pac. Rep. 1055; *People* v. *Fleming*, 3 Pac. Rep. 72.) Or authorize changing to a felony or misdemeanor what was a legal and licensed act. (*Board* v. *Aspen Co.*, 32 Pac. Rep. 718; *Ex parte* Cowert, 92 Ala. 94; 23 Am. & Eng. Enc. of Law, 234, 223, text; 262, note; *People* v. *Gadway*, 28 N. W. Rep. 101.)

This constitutional provision is clearly made mandatory by section 29 of article III, Constitution, though it was so, without this section.   (*State* v. *Rogers*, 10 Nev. 250; *Hotchkiss* v. *Marion*, 12 Mont. 218; *Davis* v. *State*, 61 Am. Dec. 340 (cited in 12 Mont. 226); Cooley on Const. Lim., page 172.) The cases of *Lane* v. *Missoula County*, and *Carruthers* v. *Madison County*, were decided by our territorial supreme court, expressly on the ground that there was no constitutional provision then requiring a reference to the subject in the title. (*Lane* v. *Commissioners*, 6 Mont. 473, 482.)

Clearly this Senate bill 48 cannot be upheld as an independent act.   (*Wall* v. *Garrison*, 11 Col. 518, 19 Pac. 470.) The fact that there is a Chapter IX of Title IX of Part I, headed ''Gaming'' in the printed edition, cuts no figure, because the compiler made this chapter under authority of section 5190 of the Political Code, which section gave the compiler no power to make valid a previously unconstitutional law   No inference of accidental omission of a heading ' Chapter IX,'' in the enrolled bill could be drawn by the court, as we have already shown, to aid the title.   (*Board* v. *Aspen M. Co.*, 32 Pac. Rep. 718.)   And even if it might, the inference of an omission, because chapter eight is followed by chapter ten, would not be justified, because in House bill 35, as originally introduced, which was Wade's printed draft, many similar gaps are found, and the chapters do not follow each other numerically.   (See Title 14, Part I, page 97, 101. See Title 2, Part II, page 125 and 128.)   While if anyone were to depart from the enrolled bill to indulge in inferences, all inferences of omission would be destroyed by the amendment found in House Journal, Vol. 2, page 124, Amendment No. 15, which expressly declared that all of Chapter IX, page 54 (thus identifying the chapter), should be striken out; and this shows that the chapter was intentionally and advisedly taken out on January 24, 1895.

HUNT, J.—An information was filed against the defendant

accusing him of opening a faro game, and thus violating section 600, chapter IX, Penal Code, 1895.

The section reads as follows : '' Every person who deals, plays, carries on, opens or causes to be opened  *   *   *   any game of faro  *   *   *   or any banking or percentage game played with cards, dice or any device for money,  *   *   *   is punishable by fine not less than two hundred dollars nor more than one thousand dollars, and must be imprisoned in the county jail until such fine and costs of prosecution are paid, such imprisonment not to exceed one year,'' etc.

There was a trial to a jury. On motion of the defendant, the court charged the jury as follows :   '' This information is based upon section 600 of the Penal Code of the state of Montana.   The agreed statement of facts concerning this section which was filed in the case of the state against Peter Kelly, by the agreement of the parties, is offered in evidence in this case. For the reasons given in the opinion of the court in that case, you are instructed that said section 600 was not enacted in conformity with the provisions of the constitution of this state, and is therefore void; and, for this reason, you are further instructed to return a verdict of not guilty.''

The defendant was acquitted.   The state appeals.

Upon the trial, an agreed statement of facts was offered in evidence, which in substance recited the various acts of the legislature bearing upon gambling, and recapitulating the history of the bills affecting the subject of gambling. These matters will be more fully referred to later on. As will be noticed by the instruction of the court to the jury, the learned judge of the district court decided that the section numbered 600 of the Penal Code of the state, as codified and published, has no validity, and was not enacted in accordance with the provisions of the constitution. Whether or not that ruling was correct is the subject of the review by us.

Counsel for all parties have referred the court to the detailed history of the several bills and laws bearing upon gaming, to the end that we may correctly ascertain the exact condition of the statute under which the respondent was charged.

It appears by the legislative records referred to that on January 17, 1895, house bill 35, entitled "A bill for an act to establish a Penal Code for the state of Montana," was introduced. By a suspension of the rules, the bill was read a first and second time by title only, and having been already printed, it was considered printed and referred to the code committee. The printed bill referred to was the Penal Code, as reported and printed in 1892 by the code commission appointed to codify the Criminal and Civil law and Procedure, and to revise, compile and arrange the statute laws of Montana, pursuant to the act of March 14, 1889 (16th sess. p. 116). This printed bill (or proposed Penal Code) had in it a chapter IX, headed "Gaming," containing seven sections, numbered 360 to 367, inclusive. (Penal Code as reported for adoption in 1892, page 54.) These several sections are substantially like sections 600–607, chapter IX, Penal Code 1895, annotated, (or like sections of chapter IX, page 1071, Penal Code, Sanders' Ed.) as published and in general use. They prohibited playing faro or any banking or percentage games of cards or dice for money or any representation of value. This will be seen by referring to section 600, quoted above.

On January 23, 1895, in the legislature, bill No. 35, for an act to establish the Penal Code, was reported back with certain amendments. Upon the House Journal for January 24, 1895 (page 124), we find that the committee on the Codes recommended the adoption of the Penal Code, with proposed amendments. The particular amendment affecting gambling was to strike out "all of chapter IX, page 54 of the Penal Code, consisting of sections 360 to 367, both inclusive; * * *" and it was recommended that section 12 of an act entitled "An act to amend an act entitled 'An act concerning licenses,' approved September 14, 1887, be substituted as section 357, as follows." Then follow the provisions of the act of September 14, 1887, fixing the licenses to be paid by persons keeping houses or saloons where games for money are played, and imposing upon those who violate the provisions of the section the same penalties originally imposed by the law of 1887.

The committee on Codes, in the same report, also recommended that sections 1 to 13, both inclusive, of an act entitled " 'An act to prohibit certain gambling games, and fixing penalties for the violation thereof,' passed at the 16th legislative assembly, and approved February 20, 1889, be inserted as sections 358 to 369a, consecutively, as follows." Then follow the several sections of the law of 1889, which counsel designate in their argument as the "Hunt Bill of 1889." The provisions of this law prohibit a large number of specified gambling games, but expressly did not prevent or prohibit the licensing and conducting, according to law, of the games called "faro bank" and "round the table poker."

The recommendation of the committee on Codes was adopted by the legislature, and on January 31st the Penal Code was finally passed. The enrolled bill contains as part of chapter 18 of title IX of part I of the act adopting a Penal Code, sections numbered 357 to 369a, inclusive, appropriately numbered, and as brought into the bill by the amendments recommended by the committee on Codes, hereinbefore referred to, and adopted on January 24th. We therefore had in the Penal Code, as passed by the legislature no chapter IX under the head of "Gaming." It was wholly wiped out, and with it went the law which prohibited faro and certain other gambling games. But the legislature did not stop there. They had gone farther, and, in their discretion and power, they adopted the law of 1889, and thus expressly authorized certain games of cards, including faro to be played for money, and prevented the playing of such others as had been prohibited before the adoption of the Codes. In other words they were not willing to abolish gambling entirely; so they rejected the recommendations of the Code commission, and restored the laws to the condition they were in when the legislature met. In doing so, they saw fit to annex the provisions of the re-enacted law of 1889 to chapter VIII, and let them follow in regular numerical order the last section, under the head of "Lotteries."

Now, let us see whether, by subsequent action of the legisla-

ture, this express permission to play faro and certain other games, embodied in the re-enacted law of 1889, was revoked by any repeal or other valid act. On February 4, 1895, senate bill No. 48, entitled "An act to amend chapter IX of the Penal Code of the state of Montana," was introduced. On February 28, 1895, this bill became a law. Its title, as appears by the enrolled bill, reads as follows : "Senate Bill No. 48, 'An act to amend chapter nine of the Penal Code of the state of Montana.' " It then proceeded : "Be it enacted by the legislative assembly of the state of Montana: Section 1. That chapter IX of the Penal Code of the state of Montana be amended as follows : Strike out sections 357–369a, inclusive, and insert in lieu thereof, the following : Section 360." Section 360 of this senate bill is substantially the same as the printed section 600, chapter IX (entitled "Gaming") page 1071, of the Sanders' Codes, or the same chapter, same title, of the Montana Annotated Codes (volume 2). It is somewhat more ample than section 360, originally reported by the Code commissioners, although, doubtless, the general prohibition against gambling would have extended to all games for money, whether enumerated or not. But, as said before, chapter IX, concerning gaming, was already stricken out by the legislature; bill No. 35, for a Penal Code, having passed both branches some five days before senate bill No. 48 was introduced. The Penal Code had not become a law, for the governor did not approve it until February 19, 1895. There was therefore before the body no chapter IX concerning gaming to be amended in the Penal Code, as chapter X followed chapter VIII. There were, however, in the Penal Code or house bill No. 35, at the time of its passage, as "An act to establish a Penal Code," and as appears by the enrolled bill, three chapters IX, under different parts, titles, and subdivisions. One chapter IX is entitled "False Weights and Measures," and pertains only to matters appropriate to its heading (sections 960–963, Penal Code 1895). Another chapter IX, headed "Postponement of a Trial," relates entirely to any continuances which a defendant or the state may desire in criminal

cases (sections 2010–2014, Penal Code 1895). Another chapter IX is entitled "Proceedings against Corporations," and relates entirely to indictments or informations found or filed against a corporation within the state (sections 2570–2579, Penal Code 1895).

The senate bill must be regarded as an independent bill. So that, even if the legislature, by the senate bill, could have amended the Penal Code, regarding the latter as another bill which had not yet become a law, what one of the three existing chapters IX did the Senate bill No. 48 refer to? The constitution will easily guide us to a conclusive answer. "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." (Const. Mont. art. V, § 23.) "No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended, shall be re-enacted and published at length." (Id. § 25.)

Who could ever tell by the title of the act that it related to any particular one of the several subjects included in the several chapters numbered IX in the Penal Code? There was not even a reference to a "title," or a "subject," or a "part" of the many titles and subjects, and of the several parts of the Code sought to be altered by the bill. Was any subject clearly expressed in such a title? Manifestly not. Its ambiguousness is too plain to require comment. Referring to a similar act, the New York court of appeals said: "To sanction such a procedure would be to override and nullify a clear, plain and mandatory provision of the constitution." (*People* v. *Hills*, 35 N. Y. 449.)

The authorities hold that formerly the title was no part of the act (*Lane* v. *Commissioners of Missoula Co.*, 6 Mont. 480); but under constitutional mandates like that

of Montana, quoted above, it is an · indispensable part of every act. (Sutherland on St. Const. § 86.) Whether the reference to the subject may be meager or not we need not now decide, but it seems that the true and actual subject should be expressed. (*Mayor*, etc., v. *Colgate*, 12 N. Y. 146; *State* v. *Miller*, 45 Mo. 495; *Tingue* v. *Village of Port Chester*, 101 N. Y. 294, 4 N. E. 625; and cases referred to in note to *Davis* v. *State*, 61 Am. Dec. 337.)

The objects of requiring an expression of the subject in the title are thus clearly stated by Judge Cooley (page 175, Const. Lim.): "It may therefore be assumed as settled that the purpose of these provisions was: First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unitentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon. by petition or otherwise, if they shall so desire. * * * The general purpose of those provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act, relating to that alone, would not only be unreasonable, but would actually render legislation impossible." (*Vide* extended note to *Davis* v. *State*, 61 Am. Dec. 337.)

Our imperative duty is to uphold the constitution when a statute conflicts with it. Whether the legislation being inquired into is good or bad, moral or immoral, in its tendencies, cannot enter into our examination of the questions involved. If the legislature has violated constitutional commands in the enactment of the senate bill now printed as a law of the Penal Code, we must declare that it has. It were far better at this time, in the early history of this new state, that

a legislative act be declared invalid than that precedent be set by which plain provisions of the constitution may be nullified by loose and questionable interpretations of our fundamental law. (*State ex rel. Woods* v. *Tooker*, 15 Mont. 8.)

Being of opinion that the senate bill printed as sections 600 to 607 of the Penal Code did not clearly express any subject in its title, it follows that it was passed in violation of the constitution. As a consequence, the sections of said act have no proper place in the published Codes, and should be expunged therefrom. Respondent concedes that the same laws which were in force in 1889, re-enacted as part of chapter 8 (sections 357-369a), Penal Code, are alive, and must control now.

The order of the district court directing the acquittal of the defendant is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.

