STATE, RESPONDENT, *v.* ANACONDA COPPER MINING
CO., APPELLANT.

[No. 1,451.]

[Submitted January 8, 1900. Decided January 29, 1900.]

*Constitution——Statutes——Validity——Expression of Subject in
Title——Criminal Law——Evidence.*

1. By Sec. 23, Art. V, of the Constitution, it is only intended that the subject of a bill shall be fairly expressed in the title; it is not necessary that a title shall embody the exact limitations or qualifications contained in the bill itself which are germane to the purpose of the legislature, if the general subject of the measure is clearly expressed in the title.

2. Laws of 1897, p. 245, entitled "An act to amend Section 705 of Title X, of the Penal Code of the state of Montana, to have the cages in all mines cased in," makes it unlawful for any corporation to sink or work through any vertical shaft where mining cages are used to a greater depth than 300 feet, unless such shaft shall be provided with an iron-bonneted safety cage. *Held,* that the subject-matter of the act is sufficiently expressed in the title, within the meaning of Constitution, Art. V, Sec. 23.

3. In a prosecution for violation of the Laws of 1897, p. 245, making it unlawful for a corporation to work through a vertical shaft where mining cages are used to a greater depth than 300 feet, unless the cage shall be provided with an iron-bonneted safety cage, evidence that such devices or cages would be dangerous is inadmissible, since the question whether such appliances were the best or wisest method is for the legislature to decide.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

THE Anaconda Copper Mining Company, convicted of violation of the act requiring cages of all mines to be cased in, appeals.    Affirmed.

*Mr. J. K. MacDonald,* for Appellant.

Defendant contends that the title of the amendatory act in question fails to state the object of the act, which was to have cased in the cages of those mines whose shafts were sunk below 300 feet.    The title, therefore, which describes the act as one to have the cages of all mines cased in, fails to state its object.    Although it may not be obvious that the passage of the bill was aided by this deception, it is sufficient to say that

our constitution has not been followed in this particular, when it provides that "no bill except general appropriation bills, and bills for the codification or general revision of laws, shall be passed containing more than one subject, which shall be clearly expressed in its title." * * * (Constitution of Montana, Art. V, Sec. 23; see *Coutieri* v. *New Brunswick*, 44 N. J. Law, 58; *City of Beverly* v. *Walm*, 57 N. J. Law, 143; *State* v. *Howell*, 60 N. J. Law, 384; Sutherland on Stat. Const. Sec. 90, p. 99; *Durkee* v. *City of Janesville*, 26 Wis. 697; *People* v. *Allen*, 42 N. Y. 404; *State* v. *Mitchell*, 17 Mont. p. 76; Dissenting opinion of Ch. J. Church in *Nenendorff* v. *Duryea*, 69 N. Y. 557; 23 Am. & Eng. Ency Law, p. 232; *In re Haynes*, 22 Atl. Rep. p. 923.) The court erred in excluding the evidence offered by the defendant to show that the devices called for by said amendatory act would not tend to promote the safety of those using the cages to which they were attached, but that, on the contrary, such devices would be dangerous and liable to result in accident. (Tiedeman on Limitations of Police Powers, Sec. 1, p. 4 and authorities cited; *Id.* Sec. 3, pp. 10–13; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; Black on Const. Law, p. 325; *Mugler* v. *Kansas*, 123 U. S. 663; Thompson on Electricity, p. 2; *Toledo, etc. R. Co.* v. *City of Jacksonville*, 16 Am. Rep. 612, 67 Ill. 37; Cooley on Const. Lim. p. 710; *In re Jacobs*, 98 N. Y. 98; *Electric Imp. Co.* v. *San Francisco*, 45 Fed. 593; *Health Dept. of New York* v. *Rector, Etc.*, 17 N. Y. S. 510.)

*Mr. C. B. Nolan, Attorney General*, for the State.

MR. JUSTICE HUNT delivered the opinion of the Court.

Conviction for violation of Section 705 of the Penal Code, as amended by an act of the Fifth legislative assembly entitled "An act to amend Section 705 of Title X of the Penal Code of the State of Montana, to have the cages in all mines cased in." (Laws of 1897, p. 245.) After a jury was impaneled and sworn to try the case, defendant moved that it be discharged, upon the ground that the amendatory act cited

above is unconstitutional, for the reason that the subject thereof is not clearly expressed in its title. This motion was overruled, and defendant duly excepted. Thereupon the state introduced evidence to sustain the charge. After the state rested, defendant sought to prove that the devices called for by the provisions of the amendatory act would not tend to promote the safety of those using the cages to which they were attached, but that, on the contrary, such devices would be dangerous, and, likely to result in accident. To this offer of evidence the state, by its counsel, objected, and the court sustained the objection. Defendant duly excepted. The jury convicted the defendant, and from a judgment imposing a fine of $300 defendant appeals.

The amendatory act, following the original section (705) of the Penal Code, makes it unlawful for "any corporation * * * to sink or work, through any vertical shaft where mining cages are used, to a greater depth than *three hundred* feet, unless said shaft shall be provided with an iron bonneted safety cage."

The most significant change between the original provision of the Code and the statute as amended is that the latter requires cages to be cased in with sheet iron, or steel, or wire netting, and to have doors of the same material, to be hung on hinges or made to slide, and to be at least five feet high from the bottom of the cage; whereas the original statute was silent concerning any such method of construction, thus leaving it optional with the mine operator to encase his cages or not, as he pleased. Evidently, therefore, it was to remove any choice in the matter, and to compel the mine operator to adopt an inclosed cage, that the amendment of 1897, *supra*, was enacted.

Is the subject contained in the amended bill clearly expressed in the title, as required by Section 23, Art. V, of the State Constitution?

The purposes of the clause of the constitutional mandate that the subject of a bill shall be clearly expressed in its title have been considered and defined by this Court in *State* v.

*Mitchell,* 17 Mont. 67, 42 Pac. 100; *Jobb* v. *Meagher Co.*, 20 Mont. 424, 51 Pac. 1034, and the authorities cited in these cases.    Briefly summarized, they are: to restrict the legislature to the enactment of laws the objects of which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those represented, may be intelligently watchful of the course of the pending bill.    The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published.    (*Com.* v. *Brown* (Va.), 21 S. E. 357, 28 L. R. A. 110.)

But by this constitutional notice it is only intended that the subject of the bill shall be fairly expressed in the title.    It is not necessary—for the constitution has not so declared—that a title shall embody the exact limitations or qualifications contained in the bill itself which are germane to the purpose of the legislature, if the general subject of the measure is clearly expressed in the title.    Upon the highest authority it is held that, under constitutional provisions substantially like that referred to in Montana, where the degree of particularity necessary to be expressed in the title of a bill is not indicated by the constitution itself, the courts ought not to "embarrass legislation by technical interpretations based upon mere form or phraseology.    The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title." (*Montclair* v. *Ramsdell*, 107 U. S. 155, 2 Sup. Ct. 391, 27 L. Ed. 431; *Powell* v. *Supervisors of Brunswick County*, 88 Va. 707, 14 S. E. 543.)

In harmony with these sound principles of the construction of like constitutional limitations, we are of opinion that appellant's point is not well taken.    We fail to see in the title

of this amending bill any substantial departure from the constitutional requirement. That the bill itself contained but one subject is obvious—in fact, we do not understand appellant to contend otherwise. That that one subject, however, is clearly expressed in the bill is disputed, but not convincingly so. The title specifically refers to the section of the Penal Code to be amended, and adds thereto, "to have the cages in all mines cased in." The law itself requires cages in all mines to be cased in if cages are used, and if the mines are worked through vertical shafts to a greater depth than 300 feet. It follows that, in mines not operated through vertical shafts over 300 feet in depth, cages, if used, need not be such as the law specifies. The law presupposes such a development as leads to the use of cages, and then only undertakes the regulations prescribed.

Now, what was the underlying object of this legislation? Plainly to better protect the lives and limbs of miners working in developed mines where such development or operation is through vertical shafts in mines where cages are used. There must be a reasonably extensive development, 300 feet in depth, before the appliances specified need be used at all; but, when such development is had, the law becomes uniform in its operation by requiring that in vertical shafts in all mines so developed where cages are used the cages must be cased in and covered in a certain way. The legislature, in its wisdom, apparently deemed it unnecessary to require such extraordinary protection in properties where the shafts, though vertical, are less than 300 feet deep; and we do not assume more than a common knowledge of mining when we state it as a fact, generally known, that in Montana few mining properties operated through vertical shafts are classified by miners as "mines" to be systematically worked until the development exceeds 300 feet. Clearly it was never meant to create a statute that would in the least retard the development of prospects by demanding expensive and elaborate means of protection, unnecessary while prospecting or shallow mining only was going on.

As stated, the aim of the legislature was to insure a proper protection for miners where a prospect has opened into a "mine" in which deep mining is to be carried on, and the enterprise has taken on some degree of permanency of operation, for, obviously, it is in deep mining that the protection is most needed.

Though the words of the title, "to have the cages in all mines cased in," are general, they give clear notice to the operators of all mines where cages are used that their properties might be affected by the law.   There was no deception by design or accident, and we cannot see how, on the one hand, any mine owner operating a mine where cages are used could fairly say that he was misled, or, on the other, a mine owner not using cages at all in his mine could have been deceived by the title.

There is, therefore, really no objection to the law other than that the title is somewhat broader than the bill itself. The effect of the comprehensiveness, however, is not reasonably to mislead or deceive.   A better title than the one given —a more limited title—could be suggested; still we think, under the doctrines of construction already invoked, the subject contained in the law is expressed by the title used with sufficient clearness to remove the act from within the mischief which the constitution says shall be avoided.   It follows that the courts cannot hold the law unconstitutional.   In line with our views we cite: *Neuendorff* v. *Duryea*, 69 N. Y. 557; *State* v. *Trolson*, 21 Nev. 419, 32 Pac. 930; *State* v. *Miller*, 45 Mo. 495; Sutherland on St. Const. Sec. 97; Cooley's Const. Lim. p. 170 *et seq.*; *Allegheny Co. Home's Appeal*, 77 Pa. St. 77; *State* v. *Becker*, 3 S. Dak. 29, 51 N. W. 1018; *In the Matter of Petition of Mayer*, 50 N. Y. 504; *Luther* v. *Saylor*, 8 Mo. App. 424.

The contention that the court erred in excluding evidence offered to show that the devices or cages required by the amended law would be dangerous, and apt to result in accidents, must fall also.   The text of the law discloses a measure designed to guard against the dangers incident to lowering

and elevating men in deep mining shafts. Whether the cased-in cage and its appliances is the best or wisest method was a question for the legislature to decide. Laws regulating the construction and operation of elevators are frequently enacted as a proper exercise of the police power of the state. The legislature is the branch of the government which exercises this power, and, unless there be constitutional limitations upon it, as a rule the judicial power cannot set aside a law passed in the exercise of it. This proposition is fundamental. Whether the courts may nullify the judgment of the legislature upon the ground that some great principle of natural right has been subverted is a question not before us, for a law requiring mining cages to be covered and cased in does not present an instance of "natural injustice" which authorizes the interposition of the courts, even could there be any such interposition under the guaranty that no man shall be deprived of life, liberty, or property without due process of law.

The judgment is affirmed.

*Affirmed.*

