LEO H. SIGETY AND LOUIS J. EICH, PLAINTIFFS AND RESPONDENTS, *v.* STATE BOARD OF HEALTH OF THE STATE OF MONTANA, AND MRS. O. H. MANN, DR. R. D. KNAPP, JOHN W. BARTLETT, DR. GEORGE H. GOULD, DR. RICHARD C. RITTER, DR. EDWIN C. SEGARD, AND MRS. JOHN C. SHEEHY, AS MEMBERS OF AND CONSTITUTING THE STATE BOARD OF HEALTH OF THE STATE OF MONTANA, DEFENDANTS AND APPELLANTS.

No. 11970.
Submitted February 11, 1971.
Decided March 15, 1971.
482 P.2d 574.

Robert L. Woodahl, Atty. Gen., Helena, Charles H. Dickman, Asst. Atty Gen. (argued) Helena, for defendants and appellants.

Jerome T. Loendorf (argued) Helena, George Padbury, Jr., Helena, for plaintiffs and respondents.

The HONORABLE FRANK E. BLAIR, District Judge, sitting in place of Mr. Chief Justice Harrison, delivered the Opinion of the Court.

Defendants appeal from a declaratory judgment of the district court of Lewis and Clark County, the Honorable Victor H. Fall, district judge, holding unconstitutional the "Dredge Mining Regulation and Land Preservation Act," Chapter 123, Session Laws of 1969.

The sole question on this appeal is whether Chapter 123 of the Session Laws of the Forty-first Legislative Assembly, 1969, Title 50, Chapter 11, R.C.M.1947, is constitutional under state and federal constitutions.

The respondent, Leo Sigety, had conducted mining operations by means of a "sluice-washing plant fed by a dragline" for five years prior to the passage of the act in question in 1969 six miles above Wilburnon on Virginia Creek on Stemple Pass, Lewis and Clark County, Montana. Mr. Sigety started with a small plant, but in the fall of 1968 he purchased a larger plant which he planned to use in the spring of 1969. Before he could begin operations in 1969 the act in question was passed. Mr. Sigety did not begin his operations in the spring of 1969 because he felt it too costly to comply with said act.

The 1969 legislature passed the "Dredge Mining Regulation and Land Preservation Act" referred to above. By the pro-

visions of this statute all persons are prohibited from carrying on "* * * mechanical operations that result in the recovery of minerals in or near a stream or riverbed, with the use of a dredge boat or sluice-washing plant, whether fed by * * * dragline * * * capable of moving ten (10) cubic yards of earth or rock material per day." Section 6(a) provides that before any person may conduct a dredge mining operation within this state he shall file with the board an application for a permit accompanied by an application fee of one hundred dollars for each ten acres or fraction thereof involved in such application. The act further provides that such permit will be issued if the Board of Health makes certain findings, and provided a surety bond in the amount of $10,000 for each specified and particular ten acre tract of the permit areas is provided to be retained as security for the faithful performance by applicant of the requirements of this act.

Each operator is required to restore the disturbed land as required in Section 8. Anyone violating the act is guilty of a misdemeanor and the penal and administrative provisions of this act are additional and cumulative to all rights of action at law or equity that may exist to enjoin wrongful dredge mining operations or recover damages resulting therefrom.

The district court declared that such act was unconstitutional, void, and of no force or effect.

█ The validity of "The Dredge Mining Regulation and Land Preservation Act" is challenged upon four constitutional grounds, federal and state, only two of which need to be considered. It is first contended that said statute violates Article V, Section 23 of the Montana Constitution which reads as follows:

"No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In State v. Brown, 29 Mont. 179, 74 P. 366, the Court said:

"It (the constitutional provision) is not satisfied unless the object of the legislation is clearly so expressed."

In State v. Cunningham, 35 Mont. 547, 551, 90 P. 755, 756, this Court declared:

"The purpose of this statute must be determined by its title. It is not competent to use one title and explain in the body of the act that it means something else. * * * This Court has no power to enlarge the title of this act by holding that public domain includes private ranges or inclosures belonging to individuals.

"* * * The respondent's contention that this whole act is void must be upheld."

In the case of State ex rel. Holliday v. O'Leary, 43 Mont. 157, 165, 115 P. 204, 206, in making reference to the foregoing provision of the State Constitution the Court observed:

"The reasons which prompted the enactment of the constitutional provision now under consideration are stated by Mr. Justice Hunt, for the court, in State v. Anaconda Copper Min. Co., 23 Mont. 498, 59 P. 854, as follows: 'The purposes of the clause of the constitutional mandate that the subject of the bill shall be clearly expressed in its title have been considered and defined by this Court in State v. Mitchell, 17 Mont. 67, 42 P. 100; Jobb v. County of Meagher, 20 Mont. 424, 51 P. 1034, and the authorities cited in these cases. Briefly summarized they are: To restrict the legislature to the enactment of laws the objects of which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those represented, may be intelligently watchful of the course of the pending bill. The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published.' However refined the distinction we have made above may appear, it is not without merit.

52

It is a part of our constitutional history that during the early years of our existence as a nation, few, if any, of our state Constitutions contained a provision similar to the one referred to herein. It is doubtful if any state Constitution now omits it. It was early discovered that ambitious or designing legislators, prompted by selfish motives or motives of less merit, procured the enactments of measures by reason of their high-sounding or popular titles, when in fact the title merely cloaked a purpose contrary to that expressed; and it was to prevent the members of the Legislature and the people generally from being thus imposed upon that the provisions have been adopted. An interesting historical sketch of the conditions which led to the adoption of a like provision in the Constitution of New York will be found in Matter of New York, 57 App.Div. 166, 68 N.Y.Supp. 196.

"The framers of our Constitution wisely held that it is not a hardship to require that every title shall clearly express the single purpose of the bill; but, even if it should prove a hardship, that it is better that an act be held inoperative, than that it be passed under a title which might deceive the unwary. From the fact that for years we had provisions for partisan and nonpartisan nominations, and that these provisions worked harmoniously, it may be that members of the Eleventh Legislative Assembly voted for this measure, who would not have voted for a measure entitled 'An act to prohibit partisan nominations for judicial offices.' But whether any member was in fact deceived is beside the question. The title of this act does not clearly express its purpose, as required by the Constitution."

See also State ex rel. Foot v. Burr, 73 Mont. 586, 588, 238 P. 585.

The title of said act: "The Dredge Mining Regulation and Land Preservation Act" is drafted in the simplest language. So simple, concise and plain is it written that it construes itself. It is a dredge mining regulation only and to that extent only is it a land preservation act. The language of the title restricts

it strictly to the objectives just mentioned. It limits land preservations "in or near a stream or riverbed" to land disturbed by dredge mining.

Moreover, the title of the act would only alert the legislature and the public to the fact dredge mining was sought to be regulated. Neither the legislature nor the public would suspect that other types of mining might be regulated by the act. Among such other types of mining methods which can result in disturbing the land in or near a stream or riverbed in the search for precious minerals are, in addition to the dredge boat, the sluice-washing plant, hydraulic water pressure systems, and rotary gravity separation mills, fed by mechanical systems, shovels *et cetera* capable of moving ten cubic yards or more of earth or rock material per day.

Among the common minerals situated in or near a stream or riverbed in the State of Montana are the following: gold, gypsum, limestone, potassium, sodium, coal, talc, phosphate.

None of the methods of mining set forth above with the single exception of dredge mining, are included in the title of the act being challenged in this action. The respondent used, until he was stopped from mining by the act complained of, the sluice-washing plant method fed by a machine capable of moving ten cubic yards of earth or rock per day.

In the case before this Court, the title of the act being challenged does not mention the sluice-washing plant method; therefore, it cannot be successfully contended that the title clearly or at all expressed directly or indirectly the subject of sluice-washing plant methods of mining or any methods at all but the dredge.

Dredge mining must be distinguished from a sluice-washing plant method fed by mechanical devices capable of handling ten cubic yards of earth or rock per day.

A placer mining dredge is described in the Mining Engineers' Handbook, Third Edition, Volume 1, by Peele, as comprising a mechanical excavator and a screening and washing plant, both mounted on a floating hull which floats in an artificial pond

(Section 10, page 577). Such a dredge is similarly described by Montana mining engineers and miners in the testimony here.

The term "sluice-washing plant" does not appear to be described in writings on the subject of mining, although the term "sluice" is described as "an inclined channel or trough, through which gravel is carried by a stream of water." Peele, Mining Engineers' Handbook, Third Edition, Volume 1, Section 10, page 540. According to the testimony at the trial, the term "sluice-washing plant," as that term is understood by Montana mining engineers and miners includes the following:

"A. * * * You can narrow it down. A sluice-washing plant can be narrowed down to even this. It's a complete plant. It can be a sluice box that is anchored in a stream bed and men are shoveling into that sluice box over a series of, let's say grizzlies, and the sluice is extracting the gold and the material is being deposited out the lower end of that particular box. There is no actual machinery involved. That can still be a sluice-washing plant."

They describe a sluice-washing plant as being something other than a dredge and state that there is a definite distinction between a dredge and a sluice-washing plant.

Thus, it is clear that a "dredge" and a "sluice-washing plant" are distinct and different objects, and because sluice-washing plants are not mentioned in the title of the bill enacting Chapter 123 of the Laws of 1969, said act violates Article V, Section 23 of the State Constitution.

And finally on this point most of the body of the act finds no springboard or bases in the title of the act itself for the rules attempted to be set forth therein.

The act clearly offends Article V, Section 23, of the State Constitution.

The second point we will consider is the contention of the respondent that "The Dredge Mining Regulation and Land

Preservation Act'' violates the Fourteenth Amendment to the Constitution of the United States in that it denies the respondents the equal protection of the law.

Section 1 of the said Fourteenth Amendment to the Constitution of the United States provides in part as follows:

''* * * No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws.''

Section 3 of the Dredge Mining Act reads as follows:

''This act shall not be construed to include any mechanical operation primarily intended for open pit mining, strip coal mining, irrigation, extraction of gravel for construction and/or road building purposes, or agricultural purposes.''

This section is a clear-cut exemption of all open pit mining, strip coal mining, irrigation water exits, and extraction of gravel for construction and/or road building purposes. It is clear from the transcript of the evidence that none of the witnesses for either of the parties could offer any reason for differentiating between mining operations regulated under this act and those exempted therefrom concerning any damages to lands, streams or water courses, nor does the act itself contain any legislative findings offering any reasons for the classification of dredge mining operations as different from other operations which disturb the ground in or near streams or riverbeds.

Respondents contend and we agree that *"to justify such discriminatory legislation, and avoid the condemnation of the Fourteenth Amendment to the federal Constitution, the classification must be reasonable—that is, must be based upon substantial distinctions which really make one class different from another."* State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 390, 403 P.2d 635. Whether ground in or near a stream or riverbed is disturbed by a dredge, a bulldozer, or a dragline shovel is not a substantial distinction which really makes one class different from another. Northern Illinois Coal Corp. v. Medill, 397 Ill. 98, 72 N.E.2d 844.

As we said in *Schultz-Lindsay*:

"The constitutional safeguard against unjust discrimination in legislation of this type is well defined by the decisions everywhere, and that is, *that the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.* Mills v. State Board of Equalization, 97 Mont. 13, 31, 33 P.2d 563.''

We hold that the exemptions set forth in Section 3 of the Dredge Mining Regulation and Land Preservation Act, Chapter 123, Session Laws of 1969, is prohibited by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

The Court having concluded that Chapter 123, Laws of 1969, entitled ''The Dredge Mining Regulation and Land Preservation Act'' violates Article V, Section 23 of the Constitution of the State of Montana and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, the judgment of the district court is accordingly affirmed.

MR. JUSTICES HASWELL, DALY, and CASTLES, and the HONORABLE SID G. STEWART,** District Judge, concur.

**Sitting in place of MR. JUSTICE JOHN C. HARRISON.