STATE Respondent, v. BROWN, Appellant.

(No. 1,989.)

(Submitted November 18, 1903.   Decided November 30, 1903.)

*Constitution—Statutes—Sufficiency of Title—Game Laws.*

Held, that Senate Bill No. 29 (Chapter 58, Laws of 1903), amending the game laws, was void, as in conflict with Constitution, Article V, Section 2, requiring that the subject of bills shall be clearly expressed in their titles.

*Appeal from District Court, Lewis and 'Clarke County; Henry C. Smith, Judge.*

WILTON G. BROWN was prosecuted under Senate Bill No. 29 (Laws of 1903, Chapter 58) for unlawfully shooting and killing a turtle dove, was found guilty, and judgment was rendered against him, from which judgment he appeals.   Reversed.

*Mr. Henry R. Thompson,* for Appellant.

(a) The court erred in overruling the demurrer of the defendant to the complaint for the·following reasons:   (1) The court was without jurisdiction to try said cause, and (2) the Act of the legislative assembly under which said complaint was made is unconstitutional, for the reasons set forth in the demurrer.   (b) Appellant claims that said Act is unconstitutional for the further reason: that it has no title, as prescribed by the constitution.

The following are the constitutional provisions relating to the procedure necessary to enact a bill into a law:   1. A quorum must be present in the house in which it is introduced.   (Const. Mont. Art. V, Sec. 10.)   2. It may be introduced in either house, with one exception.   (Const. Mont. Art. V, Sec. 32.)   3. It must have a proper enacting clause.   (Const. Mont. Art. V, Sec. 20.)   4. It must be referred to a committee.   (Const. Mont. Art. V, Sec. 22.)   5. It must be returned therefrom and

printed. (Const. Mont. Art. V, Sec. 22.) 6. With two exceptions it must not contain more than one subject which must be clearly expressed in the title. (Const. Mont. Art. V, Sec. 23.) 7. It must not be altered or amended on its passage so as to change its original purpose. (Cont. Mont. Art. V, Sec. 19.) 8. It must be passed by a majority vote of all the members present in each house. (Const. Mont. Art. V, Sec. 24.) 9. On its final passage the vote must be taken by ayes and noes. (Const. Mont. Art. V. Sec. 24.) 10. On its final passage the names of those voting must be recorded in the journal. (Const. Mont. Art. V, Sec. 24.) 11. It must not be a law which comes within the classes mentioned in Const. Mont. Art. V, Sec. 26. 12. After the final passage of the bill its title must be publicly read. (Const. Mont. Art. V, Sec. 27.) 13. And immediately thereafter it must be signed by the presiding officer of each house. (Const. Mont. Art. V, Sec. 27.) 14. In the presence of the house over which he presides. (Const. Mont. Art. V, Sec. 27.) 15. And the fact of signing shall be at once entered upon the journal. (Const. Mont. Art. V, Sec. 27.)

A question of fact respecting the existence or non-existence of a law is a question of *law* to be determined by the Court—not by a jury. (*Nesbit* v. *People,* 19 Colo. 441; *So. Ottawa* v. *Perkins,* 94 U. S. 200; *Walnut* v. *Wade,* 103 U. S. 683; *People* v. *Allen,* 42 N. Y. 378; *People* v. *Mahaney,* 13 Mich. 421; *State* v. *Wright,* 14 Ore. 365; *The Railroad Tax Case,* 8 Sawy. 238 (Cal.); *Blessing* v. *Galveston,* 42 Tex. 641; *Milwaukee County* v. *Isenring,* 109 Wis. 9; *Sherman* v. *Story,* 30 Cal. 253; *Gardner* v. *Collector,* 6 Wall. 509; *Post* v. *Supvrs.,* 105 U. S. 667.)

Courts will take judicial notice of the journals. (*Stein* v. *Leeper,* 78 Ala. 517; *Edger* v. *Board,* 70 Ind. 331; *Blake* v. *Bank,* 23 Wall. 307; *Fosdick* v. *Perrysburg,* 14 Ohio St. 472; *Somers* v. *State,* 5 S. D. 321; *In re Granger,* 56 Neb. 260; *State* v. *Frank,* 60 Neb. 327; *Miesen* v. *Canfield,* 64 Minn. 513; Opinion of the Justices, 35 N. H. 579; *State* v. *Smith,* 44 Ohio St. 348; *Currie* v. *So. Pac. Co.,* 21 Ore. 566; *Ritchie* v. *Richards,* 14 Utah, 345; *McDonald* v. *State,* 80 Wis. 407.)

When a statute is copied from the statutes of another state where it has been judicially construed, the language should be deemed to have been adopted and used in the sense as construed. (*McGovney* v. *Gwillim* (Colo. App.), 65 Pac. 346; *Goldman* v. *Soledo* (Ariz.), 68 Pac. 558; *Oswald* v. *Moran*, 8 N. D. 111; *Cass Co.* v. *Company*, 7 N. D. 528; *The Railroad Tax Case* (Cal.), 8 Sawy. 238-92.) This is equally true with respect to a constitutional provision. (*The Railroad Tax Case* (Cal.), 8 Sawy. 238, 13 Fed. 722-67.)

"The manner of the enactment of a statute is of its substance." (*Burritt* v. *Com'rs,* 120 Ill. 322; *Weill* v. *Kenfield,* 54 Cal. 111; *Legg* v. *Annapolis,* 42 Md. 203; *Burnham* v. *Morrissey,* 14 Gray, 226; *Att'y Gen'l* v. *Joy,* 55 Mich. 610; *Supv'rs* v. *Heenan,* 2 Minn. 281; *\*Green* v. *Weller,* 32 Miss. 650; dissenting opinion by Smith, C. J.; concurred in on this point by Fisher, J.; *\*Hunt* v. *State,* 22 Tex. App. 396; *State* v. *Patterson,* 98 N. C. 661; *Bank* v. *Com'rs,* 119 N. C. 214.) The same is true of a constitutional amendment. (*Durfee* v. *Harper,* 22 Mont. 354; *Oakl. Pav. Co.* v. *Hilton,* 69 Cal. 479.)

"If the resolution is not identical in both houses, or in all the different bodies called upon to ratify it, or, in other words, if the document as finally passed upon is not a true copy of what one or the other body adopted and agreed to, the variance is fatal to the Act." (*Moody* v. *State,* 48 Ala. 115, 17 Am. Rep. 28; *Smithee* v. *Garth,* 33 Ark. 17; *Wolcott* v. *Wigton,* 7 Ind. 48; *Koehler* v. *Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; *State* v. *Rogers,* 10 Nev. 250; *State* v. *Harris,* 19 Nev. 223; *Ryan* v. *Lynch,* 68 Ill. 160; *\*Steckert* v. *E. Saginaw,* 22 Mich. 104; *State* v. *Miller,* 45 Mo. 495.)

Art. I, Sec. 29, of our Constitution, which declares that "the provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise," was taken from the constitution of California (see Sec. 22 of Art. I), the language being identical. It has been held that this provision applies to each and every section of that instrument, and

---

Leading cases are marked with a star (*).

is equally binding upon each of the three departments of the government. (*1894, State v. Tooker, 15 Mont. 8; 1895, State v. French, 17 Mont. 54; 1896, State v. Camp Sing, 18 Mont. 128; 1896, Palmer v. City of Helena, 19 Mont. 61; 1898, M. C. & C. Co. v. Livingston, 21 Mont. 59; *1899, Durfee v. Harper, 22 Mont. 354; *1903, Mut. L. Ins. Co. v. Martien, 27 Mont. 437; *1903, In re Weston, 28 Mont. 207, 72 Pac. 512; 1880, Earle v. Board Education, 55 Cal. 489-91; *1880, Ewing v. Mining Co., 56 Cal. 648-55; 1881, Matter of Maguire, 57 Cal. 604-09; 1884, Ex parte Wolters, 65 Cal. 479-92, 3 Pac. 894; *1886, Oakl. Pav. Co. v. Hilton, 69 Cal. 479, 492, 512, 513, 11 Pac. 3; 1890, People v. C. P. R. R. Co., 83 Cal. 393, 23 Pac. 303; 1890, First Nat'l Bank v. Superior Court, 83 Cal. 491-94, 24 Pac. 157; 1890, Davies v. Los Angeles, 86 Cal. 37-50, 24 Pac. 771; 1891, In re Mad. Irr. Dist., 92 Cal. 296-316, 28 Pac. 272, 675; 1892, Dougherty v. Austin, 94 Cal. 601-08, 28 Pac. 834, 29 Pac. 1092; 1894, Burch v. Colombet, 104 Cal. 347-51, 38 Pac. 45; 1897, Dwyer v. Parker, 115 Cal. 544-48, 47 Pac. 372; 1900, Knight v. Dwyer, 128 Cal. 245-47, 60 Pac. 849; 1900, Pereria v. Wallace, 129 Cal. 397-403, 62 Pac. 61; 1901, People v. Mullender, 132 Cal. 217-19, 64 Pac. 299; 1901, Lewis v. Dunne, 134 Cal. 291-96, 66 Pac. 478.)

Where the constitution requires certain forms to be observed in the enactment of a statute, they must be observed to render the Act valid—otherwise it is void. (Field v. Clark, 143 U. S. 649, as per Harlan, J., in Board v. Coler, 180 U. S. 506; United States v. Ballin, 144 U. S. 1; Cohn v. Kingsley (Idaho), 49 Pac. 985; Spangler v. Jacoby, 14 Ill. 297; Ry. Co. v. Hughes, 38 Ill. 174; Burritt v. Com'rs, 120 Ill. 322; Norman v. Ky. Board, 93 Ky. 537; Annapolis v. Harwood, 32 Md. 471; Legg v. Annapolis, 42 Md. 203; County Com'rs v. Burgess, 61 Md. 14; Burnham v. Morrissey, 14 Gray, 226; Att'y Gen'l v. Joy, 55 Mich. 610; Supv'rs v. Heenan, 2 Minn. 281; State v. Patterson, 98 N. C. 661; Bank v. Com'rs, 119 N. C. 214; Smathers v. Com'rs, 125 N. C. 480; Com'rs v. De Rossett, 129 N. C. 275; State v. Kiesewetter, 45 Ohio. St. 254; Currie

v. *So. Pac. Co.,* 21 Ore. 566; *State v. Hagood,* 13 S. C. 46; *Gaines v. Horrigan,* 4 Lea, 608; *Hunt v. State,* 22 Tex. App. 396; *Ex parte Tipton,* 28 Tex. App. 438; *Ritchie v. Richards,* 14 Utah, 345.)

There being no mandatory provisions in the constitution: (a) The failure of the presiding officer to sign a bill will not affect its validity. (*Taylor v. Wilson,* 17 Kan. 83; *Cottrell v. State,* 9 Neb. 125; *In re Roberts,* 5 Colo. 525; *Spcer v. Plnk. Rd. Co.,* 22 Pa. St. 376.) (b) Signing the bill is essential to its validity. (*Annapolis v. Harwood,* 32 Md. 471; *Burritt v. Com'rs,* 120 Ill. 322; *State v. Kiesewetter,* 45 Ohio. St. 254; *State v. Halliday,* 63 Ohio. St. 165; *State v. Platt,* 2 S. C. 150; *\*Hunt v. State,* 22 Tex. App. 396, 3 S. W. 233; *\*Ex parte Tipton,* 28 Tex. App. 438, 13 S. W. 610; *\*Spangler v. Jacoby,* 14 Ill. 297; *State v. Algood,* 87 Tenn. 163.)

Where by the constitution the presiding officer in the presence of the house over which he presides is required to sign all bills and joint resolutions, and the fact of signing to be entered on the journal, it must affirmatively appear from the journals that the constitutional requirements were complied with. (*State v. Kiesewetter,* 45 Ohio St. 254; *Cohn v. Kingsley* (Idaho), 49 Pac. 985; *R. R. Co. v. Hughes,* 38 Ill. 174; *Burritt v. Com'rs,* 120 Ill. 322; *Annapolis v. Harwood,* 32 Md. 471; *State v. Halliday,* 63 Ohio St. 165; *\*Hunt v. State,* 22 Tex. App. 396, 3 S. W. 233; *Ex parte Tipton,* 28 Tex. App. 438, 13 S. W. 610; *State v. Platt,* 2 S. C. 150.)

The following are very nearly, if not all, the reported American cases upon the subject of whether, in case of a conflict between them, the enrolled Act or the journals of the legislature control:

Alabama.—In this state it is held that the journals control. (1848, *State v. Marshall,* 14 Ala. 411; 1854, *Collier v. Frierson,* 24 Ala. 109; 1856, *Dew v. Cunningham,* 28 Ala. 466; 1869, *Jones v. Hutchinson,* 43 Ala. 721; 1872, *Moody v. State,* 48 Ala. 115, 17 Am. Rep. 28; 1875, *State v. Buckley,* 54 Ala. 599; 1876, *Harrison v. Gordy,* 57 Ala. 49; 1877, *County v.*

*Ry. Co.*, 58 Ala. 546; 1877, *Clark* v. *Jack*, 60 Ala. 271; 1877,
*Walker* v. *Griffith*, 60 Ala. 361; 1880, *McKenie* v. *Gorman*,
68 Ala. 442; 1884, *Moog* v. *Randolph*, 77 Ala. 597; *1884,
*Sayre* v. *Pollard*, 77 Ala. 608; 1885, *Abernathy* v. *State*, 78
Ala. 411; 1885, *Donnelly* v. *State*, 78 Ala. 453; 1885, *Stein* v.
*Leeper*, 78 Ala. 517; 1886, *Hall* v. *Steele*, 82 Ala. 562, 2 So.
650; 1887, *Hare* v. *Kennerly*, 83 Ala. 608, 3 So. 683; 1890,
*Jennings* v. *Russell*, 92 Ala. 603, 9 So. 421; 1891, *Henderson*
v. *State*, 94 Ala. 95, 10 So. 332; 1898, *Ex parte Iron Co.*, 119
Ala. 484, 24 So. 516; 1899, *O'Hara* v. *State*, 121 Ala. 28, 25
So. 662; 1899, *State* v. *Wilson*, 123 Ala. 259, 26 So. 482, 45
L. R. A. 772; 1900, *Mont. etc. Wks.* v. *Gaston*, 126 Ala. 425,
28 So. 497, 51 L. R. A. 396; 1901, *Robertson* v. *State*, 130 Ala.
164, 30 So. 494.) None of the constitutions of Alabama, 1819,
1865, 1867 or 1875, have any general mandatory provision.
That of 1875, under which the last case was decided, has a pro-
vision (Art. IV, Sec. 13) as to keeping journals, and a pro-
vision as to signature of presiding officers on bills almost ex-
actly like our own constitution (Art. IV, Sec. 27).

Arizona.—In Arizona it is held that the Act is conclusive.
(1876, *Graves* v. *Alsap*, 1 Ariz. 274, 25 Pac. 836; 1895, *Har-
wood* v. *Wentworth* (Ariz.), 42 Pac. 1028; 1896, *Harwood* v.
*Wentworth*, 162 U. S. 547.)

Arkansas.—In Arkansas the journals control the enrolled
Act. (1857, *Burr* v. *Ross*, 19 Ark. 250; 1871, *Vinsant* v. *Knox*,
27 Ark. 266; 1873, *English* v. *Oliver*, 28 Ark. 317; 1877, *State*
v. *Ry. Co.*, 31 Ark. 701; 1877, *Worthen* v. *Badgett*, 32 Ark.
496; 1878, *Smithee* v. *Garth*, 33 Ark. 17; 1879, *State* v. *Craw-
ford*, 35 Ark. 237; 1882, *County* v. *Davies*, 40 Ark. 200; 1883,
*Smithee* v. *Campbell*, 41 Ark. 471; 1884, *Webster* v. *Little
Rock*, 44 Ark. 536; 1886, *Davies* v. *Gaines*, 48 Ark. 370, 3 S.
W. 184; 1887, *Dow* v. *Beidelman*, 49 Ark. 325, 5 S. W. 297;
*1889, *Glidewell* v. *Martin*, 51 Ark. 599, 11 S. W. 882.) Ar-
kansas has had five constitutions, 1836, 1861, 1864, 1868 and
1874, the last being now in force. All have a provision in re-
gard to keeping journals, save the first, which only provides for

the publication, evidently thinking one would necessarily be kept.

California.—In the early decisions of this state the court held that the journals controlled the Act, even allowing oral evidence to be introduced in the first of the two following cases: 1852, *Fowler* v. *Pierce*, 2 Cal. 165; 1853, *Vanderslice* v. *Hanks*, 3 Cal. 47. Then followed the leading case of, *1863, *Sherman* v. *Story*, 30 Cal. 253, 89 Am. Dec. 93, per Sawyer J., in which it was held that the journals could not be used to impeach the enrolled Act. This was followed by, 1872, *People* v. *Burt*, 43 Cal. 560. All these decisions were under the constitution of 1849, which contained no general mandatory provision, but simply one (Art. IV, Sec. 11) providing that journals should be kept. But the constitution adopted in 1879, and which is now in force, has in it a mandatory provision exactly like our own, and from which, apparently, our own was taken (Art. I, Sec. 22). It also has a provision by which journals are to be kept (Art. IV, Sec. 10), but none requiring the signature of the presiding officers to bills. Under this constitution it has been held that the journals control the enrolled Act. (1880, *Weill* v. *Kenfield*, 54 Cal. 111, per McKinstry, J.; *1882, *The Railroad Tax Case, County* v. *R. R. Co.*, 8 Sawy. 238-92, 13 Fed. R. 722-67, per Sawyer, J.; 1883, *County of Santa Clara* v. *Southern Pac. R. Co.*, 18 Fed. 385; 1885, *People* v. *Thompson*, 67 Cal. 628, 9 Pac. 833; *1886, *Oakl. P. Co.* v. *Hilton*, 69 Cal. 211, 11 Pac. 3; 1889, *People* v. *Dunn*, 80 Cal. 211, 22 Pac. 140, 13 Am. St. 118; 1891, *Stevenson* v. *Colgan*, 91 Cal. 649, 27 Pac. 1089, 25 Am. St. 230, 14 L. R. A. 459; 1893, *People* v. *County*, 100 Cal. 419, 35 Pac. 302; 1896, *Hale* v. *McGettigan*, 114 Cal. 112, 45 Pac. 1049; 1899, *Popper* v. *Broderick*, 123 Cal. 456, 56 Pac. 53.) But two years ago, in the following cases, 1901, *County* v. *Colgan*, 132 Cal. 265, 64 Pac. 403; 1901, *People* v. *Harlan*, 133 Cal. 16, 65 Pac. 9, the Supreme Court of California has apparently reversed all the previous decisions under the new constitution. These were commissioners' decisions, and after a full oral argument two of the

justices dissented in the first case. The opinions are based on the decisions in *Sherman* v. *Story, supra,* and *Field* v. *Clark* (U. S.), and the mandatory provision of the constitution is apparently disregarded.

Colorado.—In this state the journals control the enrolled Act. (*1881, *In re Roberts,* 5 Colo. 525; 1888, *Hughes* v. *Felton,* 11 Colo. 489, 19 Pac. 444; 1891, *In re Gen'l Appropriation Bill,* 16 Colo. 539, 29 Pac. 379; 1894, *Nesbit* v. *People,* 19 Colo. 441, 36 Pac. 221; 1894, *Ins. Co.* v. *Trust Co.,* 20 Colo. 1, 36 Pac. 793; 1894, *Robertson* v. *People,* 20 Colo. 279, 38 Pac. 326; 1899, *In re House Bill No. 250,* 26 Colo. 234, 57 Pac. 49.) The constitution of 1876 has no such mandatory provision as our own, nor is there any provision as to the signatures of the presiding officers; but Art. V, Sec. 13, provides that the journals shall be kept.

Connecticut.—In Connecticut the Act controls, and the journals cannot be used to impeach it. (*1849, *Eld* v. *Gorham,* 20 Conn. 8.) This case was given by a divided bench, two judges doubting, and is held in some opinions to be not altogether in point. Connecticut has no general mandatory provisions either in the constitution of 1776, or in that of 1818; the latter, however, has a provision that the journal shall be kept, Art. III, Sec. 9, but none for the signing by the presiding officers of bills.

Dakota Territory.—While a territory it was decided that the silence of the journals would not overthrow the presumption of regularity attaching to the certificate of the presiding officers to the passage of a bill, but the question of the conflict between the enrolled Act and the journals has not been decided. (1889, *Territory* v. *O'Connor,* 5 Dak. 397, 3 L. R. A. 355.)

Delaware.—No cases in this state have been found on this point. The constitution of 1831, now in force, contains no general mandatory provision, nor one relating to the signing of bills by the presiding officers, but Art. II, Sec. 8, provides that journals shall be kept.

Florida.—In Florida the journals control the enrolled Act. (*1884, *State* v. *Brown,* 20 Fla. 407; 1888, *State* v. *Deal,* 24

Fla. 293, 4 So. 889; *1893, *Mathis* v. *State,* 31 Fla. 291, 12
So. 681; 1895, *State* v. *Green,* 36 Fla. 154, 18 So. 334; 1895,
*State* v. *Hocker,* 36 Fla. 358, 18 So. 767.)   The constitutions
of Florida, 1838, 1865, 1868 and 1885, contain no general
mandatory provisions; the last one, now in force, provides in
Art. III, Sec. 12, for the keeping of journals, and in Art. III,
Sec. 17, for authentication by the presiding officers.   It may
be proper to observe that in this state the provisions of the
constitution relating to the due enactment of laws are held to
be mandatory, *Mathis* v. *State, supra.*

. Georgia.—In this state the presumption from the enrolled
Act is controlled by the journals.   (1890, *Speer* v. *Mayor,* 85
Ga. 49, 11 S. E. 802, 9 L. R. A. 402; 1892, *Butler* v. *State,*
89 Ga. 821, 15 S. E. 763; 1897, *Ansley* v. *Hooper,* 101 Ga.
231, 28 S. E. 649.)   Georgia has had six different constitutions,
1777, 1789, 1798, 1865,, 1868 and 1877, the last being that
under which the cases *supra* were decided.   None of these con-
tain a general mandatory provision.   The constitutions of 1865
and 1868 have provisions for preserving enrolled bills in the
office of the secretary of state.   That of 1868 had provisions as
to keeping journals and that bills should be signed by the pre-
siding officers.   That of 1877 provides, Art. I, Sec. 4, Par. 2,
that unconstitutional laws shall be declared so by the judiciary,
and, Art. III, Sec. 7, Par. 4, that journals shall be kept, and by
Par. 13 of the same section that the bills shall be signed by the
presiding officers.

Idaho.—Here it is held that the enrolled Act is controlled by
the journal.   (1889, *Burkhardt* v. *Reed,* 2 Idaho, 470, 22 Pac.
1; 1889, *Clough* v. *Curtis,* 2 Idaho, 489, 22 Pac. 8; 1895,
*Wright* v. *Kelley* (Idaho), 43 Pac. 565; 1895, *Water Co.* v.
*Stockslager* (Idaho), 43 Pac. 568; 1896, *County* v. *Heard*
(Idaho), 45 Pac. 890; *1887, *Cohn* v. *Kingsley* (Idaho), 49
Pac. 985, 38 L. R. A. 74; 1897, *State* v. *Boise,*(Idaho), 51 Pac.
110; 1897, *Brown* v. *Collister* (Idaho), 51 Pac. 417; 1900, *An-
drews* v. *Com'rs* (Idaho), 63 Pac. 592.)   The Idaho constitution
of 1889 is similar to our own, but has no general mandatory pro-

vision; yet the court, in *Cohn* v. *Kingsley, supra,* laid it down
that the provisions of the constitution in the manner of the pas-
sage of bills were mandatory.   See Const. of Idaho, Art. III,
Sec. 15, and note, in Vol. I, Idaho Codes Annotated, p. LXX,
(1901).   Idaho has no constitutional provision for authentica-
tion by the presiding officers.

Illinois.—In Illinois any variance between the enrolled Act
and the journals is controlled by the latter.   (1846, *People* v.
*Campbell,* 3 Gilm. 466; *1853, *Spangler* v. *Jacoby,* 14 Ill. 297,
58 Am. Dec. 571, and note; 1855, *Turley* v. *County,* 17 Ill.
151; 1857, *People* v. *Hatch,* 19 Ill. 283; 1857, *Prescott* v.
*Trustees,* 19 Ill. 324; 1861, *Supv'rs* v. *People,* 25 Ill. 163;
1863, *People* v. *Hatch,* 33 Ill. 9; *1864, *People* v. *Starne,* 35
Ill. 121, 85 Am. Dec. 348, 24 Am. L. Reg. 155; *1865, *Ry. Co.*
v. *Hughes,* 38 Ill. 174; 1867, *Ry. Co.* v. *Wren,* 43 Ill. 77;
1867, *Bedard* v. *Hall,* 44 Ill. 91; 1867, *Grob* v. *Cushman,* 45
Ill. 119; 1871, *People* v. *De Wolf,* 62 Ill. 253; 1872, *Hensoldt*
v. *Petersburg,* 63 Ill. 157; *1873, *Ryan* v. *Lynch,* 68 Ill. 160;
1873, *Happel* v. *Brethauer,* 70 Ill. 166, 22 Am. Rep. 70; 1873,
*Miller* v. *Goodwin,* 70 Ill. 659; 1874, *Plummer* v. *People,* 74
Ill. 361; 1875, *Larrison* v. *Ry. Co.,* 77 Ill. 11; 1876, *Binz* v.
*Webber,* 81 Ill. 288; 1879, *People* v. *Lowenthal,* 93 Ill. 191;
1881, *Wenner* v. *Thornton,* 92 Ill. 156; *1887, *Burritt* v.
*Com'rs,* 120 Ill. 322, 11 N. E. 120; 1887, *Leach* v. *People,* 122
Ill. 420, 12 N. E. 726; 1892, *Ry. Co.* v. *People,* 143 Ill. 434,
33 N. E. 173, 19 L. R. A. 119; 1902, *People* v. *Knopf,* 198 Ill.
340, 64 N. E. 842.)   None of the Illinois constitutions have
any general mandatory provisions.   That of 1870, now in force,
has a provision as to the journals, Art. IV, Sec. 10, and also one
with regard to signing bills by the presiding officers, Art. IV,
Sec. 13.   The constitutions of 1818 and 1848 have similar pro-
visions.   It may be further stated that it was from Illinois that
California obtained her present constitution. (13 Fed. 767).

Indiana.—In this state the journals do not control the Act
as enrolled.   Formerly the journals were used to impeach the
Act.   (1851, *Skinner* v. *Deming,* 2 Ind. 560; *1856, *Coleman*

v. *Dobbins,* 8 Ind. 156, and reporter's note; 1858, *McCulloch* v. *State,* 11 Ind. 484; 1860, *Coburn* v. *Dodd,* 14 Ind. 347; 1861, *State* v. *Bailey,* 16 Ind. 48; 1864, *Cordell* v. *State,* 22 Ind. 4.) But the rule was changed, and the Act is now conclusive. (*1869, *Evans* v. *Browne,* 30 Ind. 514, 95 Am. Dec. 710; 1873, *Turbeville* v. *State,* 42 Ind. 490; 1876, *Bender* v. *State,* 53 Ind. 254; 1880, *Edger* v. *Com'rs,* 70 Ind. 331; 1883, *County* v. *Burford,* 93 Ind. 383; 1886, *Stout* v. *Com'rs,* 107 Ind. 343, 8 N. E. 222; 1888, *State* v. *Denny,* 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65; 1889, *Hovey* v. *State,* 119 Ind. 395, 21 N. E. 21; Berkshire, J., in a separate opinion, holds that in this case the journals were proper if not conclusive evidence; 1894, *State* v. *Boice,* 140 Ind. 506, 40 N. E. 113; 1894, *W. U. Tel. Co.* v. *Taggart,* 141 Ind. 281, 40 N. E. 1051, 60 L. R. A. 671; 1897, *Lewis* v. *State,* 148 Ind. 346, 47 N. E. 675; 1897, *Board* v. *Reeves,* 148 Ind. 467, 46 N. E. 995.) Neither the constitution of 1816 nor that of 1851, now in force, contains a general mandatory provision. Both have provisions for keeping journals and for the presiding officers signing bills, those of the latter being Secs. 12 and 25, respectively, of Art. IV.

Iowa.—In Iowa the enrolled Act in the office of the secretary of state is conclusive. (1857, *Clare* v. *State,* 5 Iowa, 509; *1861, *Duncombe* v. *Prindle,* 12 Iowa, 1; 1886, *Jordan* v. *Circuit Court,* 69 Iowa, 177, 28 N. W. 548.) But the journals may be referred to in the case of a disputed amendment to the constitution. (*1883, *Koehler* v. *Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; 1901, *State* v. *Brockhardt,* 113 Iowa, 250, 84 N. W. 1064.) The constitution of 1846 was superseded by that of 1857, now in force. Neither contained a general mandatory provision. Both had sections relating to keeping journals and the signing of bills by the presiding officers, and also clauses declaring the constitution to be "the supreme law of the land." See Art. III, Secs. 9 and 12, and Art. XII, Sec. 1, respectively, of the 1857 constitution.

Kansas.—In this state the enrolled Act is controlled by the

journals. (1874, *Haynes* v. *Heller,* 12 Kan. 384, and note; *1875, *Division of County,* 15 Kan. 194; 1876, *Com'rs* v. *Higginbotham,* 17 Kan. 62; *1881, *In re Const. Prohib. Amendment,* 24 Kan. 700; 1882, *State* v. *Francis,* 26 Kan. 724; 1882, *In re Vanderberg,* 28 Kan. 243; *1886, *Weyand* v. *Stover,* 35 Kan. 545, 11 Pac. 355; 1889, *State* v. *Robertson,* 41 Kan. 200, 21 Pac. 382; 1891, *C. & C. Ry. Co.* v. *Manhattan,* 45 Kan. 419, 25 Pac. 879; 1893, *In re Gunn,* 50 Kan. 155, 32 Pac. 470; 1897, *Homrighausen* v. *Knoche,* 58 Kan. 646, 50 Pac. 879; 1898, *In re Taylor,* 60 Kan. 87, 55 Pac. 340; 1900, *Chesney* v. *McClintock,* 61 Kan. 94, 58 Pac. 993; 1902, *State* v. *Andrews,* 64 Kan. 474, 67 Pac. 870.) Kansas had three constitutions prior to that now in force, viz., 1855, 1857 and 1858. In 1859 the present one was adopted. This has provisions similar to the former ones as to keeping journals (Art. II, Sec. 10), and for authentication of bills by the presiding officers (Art. II, Sec. 14).

Kentucky.—In the earlier decisions it was strongly intimated that the enrolled Act would be controlled by the journals. (1869, *Com.* v. *Jackson,* 5 Bush. 680; 1878, *Auditor* v. *Haycraft,* 14 Bush. 284.) And the case of 1890, *Ward* v. *Beall,* 91 Ky. 60, 14 S. W. 967, held that the enrolled Act was controlled by the printed statutes when these had been subsequently adopted by the legislature. The case of, 1892, *Miller* v. *Johnson,* 92 Ky. 589, 18 S. W. 123, was in regard to a constitutional amendment, and the journals were consulted. And in the case of, *1892, *Norman* v. *Kentucky Board,* 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556, the court plainly indicates the controlling influence of the journals. But the rule was changed in, 1896, *Lafferty* v. *Huffman,* 99 Ky. 80, 35 S. W. 123, 32 L. R. A. 203; 1896, *Com.* v. *Shelton,* 99 Ky. 120, 35 S. W. 128; 1896, *Com.* v. *Harden Co. Ct.,* 99 Ky. 188, 35 S. W. 275.) And the enrolled Act now controls. (1897, *Trustees* v. *Louisville,* 100 Ky. 470, 36 S. W. 921; 1897, *O. & N. Ry. Co.* v. *Barclay's Adm'r,* 102 Ky. 16, 43 S. W. 177; 1899, *Waller* v. *Murray* (Ky.), 53 S. W. 25.)

It appears from *Lafferty* v. *Huffman, supra,* that journals may be used in some cases, especially when taken in connection with *Trustees* v. *Louisville, supra,* the same judge delivering the opinion in each case. In Kentucky none of the constitutions, 1792, 1799, 1850, or 1891, contain general mandatory provisions. The last contains (Sec. 40) a provision for keeping journals, and also an explicit provision (Sec. 56) for authentication by the presiding officers.

Louisiana.—Formerly in this state the enrolled Act was held conclusive. (*1871, *Lottery Co.* v. *Richoux,* 23 La. Ann. 743, 8 Am. Rep. 161; 1873, *Whited* v. *Lewis,* 25 La. Ann. 568.) But the rule was changed, and the journals now control. (*1884, *City* v. *Brooks,* 36 La. Ann. 641; 1891, *State* v. *Mason,* 43 La. Ann. 590, 9 So. 776; *1893, *Hollingsworth* v. *Thompson,* 45 La. Ann. 222, 12 So. 1; 1897, *State* v. *King,* 49 La. Ann. 881, 21 So. 585; 1898, *Board* v. *Fowler,* 50 La. Ann. 1358, 24 So. 809; 1901, *State* v. *Laiche,* 105 La. 84, 29 So. 700.) Louisiana has had six constitutions, 1812, 1845, 1852, 1864, 1869 and 1879, the latter being now in force. All contain no general mandatory provisions. The former ones have sections relating to keeping journals, but none as to authentication of bills by the presiding officers. The present one, Art. 28, provides for keeping journals and their preservation in the secretary of state's office; and also, Art. 39, for the signing by the presiding officers of all bills in open house, and that the "fact of signing shall be noted on the journal."

Maine.—In Maine it is held that the enrolled Act will not be controlled by the journals. (*1889, *Weeks v. Smith,* 81 Me. 538, 18 Atl. 325.) Maine has had but one constitution, that of 1820. In 1875 a revision took place by which certain amendments were incorporated into the body of the instrument. The revised instrument, Art. IV, Part III, Sec. 5, provides for the keeping of journals, but has no provision for the signing of bills by the presiding officers of the two houses, nor any general mandatory provision.

Maryland.—Maryland first held that the enrolled Act was

conclusive. (1829, *Binney's Case,* 2 Bland. 99-154; 1856, *Dowling* v. *Smith,* 9 Md. 242-278-79.) In the following case, which is sometime cited *contra,* Eccleston, J., held that the journals could be examined: *1858, *Fouke* v. *Fleming,* 13 Md. 392-412. In the following case Maulsby, J., held that an Act, to be valid, must be signed by the governor in the presence of the officers of the two houses, holding Art. III, Sec. 29, of the constitution of 1864 to be mandatory: 1870, *Annapolis* v. *Harwood,* 32 Md. 471, 3 Am. Rep. 161. The present rule is that the journals control. (*1875, *Berry* v. *Ry. Co.,* 41 Md. 446, 20 Am. Rep. 69; *1875, *Legg* v. *Annapolis,* 42 Md. 203; 1878, *Struss* v. *Heiss,* 48 Md. 292; 1883, *Co. Com'rs* v. *Burgess,* 61 Md. 14; 1896, *Creager* v. *Hooper,* 83 Md. 490-504, 36 Atl. 359.) None of Maryland's constitutions have contained general mandatory provisions, nor any provision for authentication by the presiding officers. The constitution of 1867, now in force, has a provision for keeping journals (Art. III, Sec. 22), and also one by which the governor is to sign all bills in the presence of the presiding officers and chief clerks of the two houses, etc. (Art. III, Sec. 30), similar provisions being found in the constitutions of 1851 and 1864.

Massachusetts.—It appears in the following case that the legislative journals were minutely examined, but no case has been found where the question of a conflict between them and the enrolled Act has been passed upon: 1878, *Opinion of the Justices,* 126 Mass. 557. There is also a *dictum* of Hoar, J., to the effect that it is the province and duty of the court to determine whether the constitutional requirements with regard to the enactment of laws have been observed by the legislature. (1859, *Burnham* v. *Morrissey,* 14 Gray, 226.) The constitution of 1780, now in force, contains no general provisions mandatory, or as to keeping journals, or as to signing bills by the presiding officers. Part II, Chap. I, Sec. 1, Art. I, evidently contemplates that journals will be kept.

Michigan.—In this state the journals control the enrolled Act. (1844, *Green* v. *Graves,* 1 Dougl. 351; 1849, *Nesmith* v. *Shel-*

*don* (Mich.), 7 How. 812; 1851, *Southworth* v. *Ry. Co.,* 2 Mich. 287; *1865, *People* v. *Mahaney,* 13 Mich. 481, per Cooley, J.; 1867, *People* v. *Supervisor,* 15 Mich. 254; 1870, *Steckert* v. *E. Saginaw,* 22 Mich. 104, per Cooley, J.;1882, *Pack* v. *Barton,* 47 Mich. 520, 11 N. W. 367, per Cooley, J.; 1884, *Atty. Gen.* v. *Joy,* 55 Mich. 94, 20 N. W. 806, per Cooley, C. J.; 1886, *Callaghan* v. *Chipman,* 59 Mich. 610, 26 N. W. 806; 1886, *Atty. Gen.* v. *Amos,* 60 Mich. 372, 27 N. W. 571; 1887, *Atty. Gen.* v. *Rice,* 64 Mich. 385, 31 N. W. 203; 1888, *People* v. *McElroy,* 72 Mich. 446, 40 N. W. 750, 2 L. R. A. 609; 1889, *Sackrider* v. *Supervisors,* 79 Mich. 59, 44 N. W. 165; 1890, *Stow* v. *Grand Rapids,* 79 Mich. 595, 45 N. W. 493; 1890, *Rode* v. *Phelps,* 80 Mich. 598, 45 N. W. 493; 1890, *Caldwell* v. *Ward,* 83 Mich. 13, 46 N. W. 1024; 1891, *People* v. *Burch,* 84 Mich. 408, 47 N. W. 765; 1891, *Atty. Gen.* v. *Supervisors,* 89 Mich. 552-92, 51 N. W. 483; 1892, *Com. Council* v. *Board,* 91 Mich. 78, 51 N. W. 787; 1893, *Atty. Gen.* v. *Pl-Rd. Co.,* 97 Mich. 589, 56 N. W. 943; 1894, *Atty. Gen.* v. *Parsell,* 100 Mich. 170, 58 N. W. 839; 1894, *Toll* v. *Jerome,* 101 Mich. 468, 59 N. W. 816; 1895, *Davock* v. *Moore,* 105 Mich. 120, 63 N. W. 424; *1898, *People* v. *Dettenthaler,* 118 Mich. 595, 77 N. W. 450, 44 L. R. A. 164; 1899, *Allen* v. *Board,* 122 Mich. 324, 81 N. W. 113, 47 L. R. A. 117; 1901, *Com. Council* v. *Schmid,* 128 Mich. 379, 87 N. W. 383.) Neither the constitution of 1835 nor that of 1850 (now in force) contains general mandatory provisions. In the latter, Art. IV, Sec. 10, provides for keeping journals. It was held in *People* v. *Dettenthaler, supra,* that the provisions of the constitution were not directory merely.

Minnesota.—Minnesota holds that the journals may be used to impeach the enrolled Act. (*1858, *Supervisors* v. *Heenan,* 2 Minn. 281; 1877, *State* v. *Hastings,* 24 Minn. 78; 1883, *State* v. *Gould,* 31 Minn. 189, 17 N. W. 276; 1884, *Burt* v. *Ry. Co.,* 31 Minn. 472, 18 N. W. 285; 1888, *State* v. *Peterson,* 38 Minn. 143, 36 N. W. 443; *1891, *Comstock* v. *Tracey* (Minn.), 46 Fed. Rep. 162; 1891, *Lincoln* v. *Haugan,* 45 Minn. 451,

48 N. W. 196; 1893, *Ellis v. Ellis,* 55 Minn. 401, 56 N. W. 1056; *1896, *Miesen v. Canfield,* 64 Minn. 513, 67 N. W. 632; 1897, *Kelly v. Gallup,* 67 Minn. 169, 69 N. W. 812; 1900, *Lien v. Board,* 80 Minn. 58, 82 N. W. 1094.) The constitution of 1857, now in force in Minnesota, has no general mandatory provisions. Art. IV, Sec. 5, is the provision with reference to keeping journals, and Section 21 of the same article provides that the presiding officers of the two houses shall sign all bills, and in case of refusal to sign the house may provide for proper authentication.

Mississippi.—In this state the enrolled Act is conclusive. In two cases the decision was otherwise: *1856, *Green v. Weller,* 32 Miss. 650, and also 33 Miss. 735; 1874, *Brady v. West,* 50 Miss. 68. But the third of the following cases settled the rule: 1866, *Swann v. Buck,* 40 Miss. 268; 1877, *Greer v. State,* 54 Miss. 378; *1886, *Ex parte Wrenn,* 63 Miss. 512, 56 Am. Rep. 825; 1892, *Hunt v. Wright,* 70 Miss. 298, 11 So. 608. The constitutions of 1817, 1832, 1868 and 1890 contain no general mandatory provisions. All contain provisions for publication of the journals—not for keeping them; and for the authentication of bills by the presiding officers, the last one also providing that the fact of signing shall be entered on the journal.

Missouri.—Missouri held at first that the enrolled Act was conclusive, though allowing the journals to be consulted in the case of a constitutional amendment. (1821, *Douglas v. Bank,* 1 Mo. 20; 1836, *State v. McBride,* 4 Mo. 303, 29 Am. Dec. 636; *1856, *Ry. Co. v. Governor,* 23 Mo. 353, 66 Am. Dec. 673; 1873, *St. Louis v. Foster,* 52 Mo. 513.) But under the constitution of 1875 the journals are held to control the enrolled Act. (1875, *Bradley v. West,* 60 Mo. 33; *1879, *State v. Mead,* 71 Mo. 266; 1883, *Pacific v. Siefert,* 79 Mo. 210.) This last case holds apparently to the old rule, but the rule in favor of the journals is now well settled. (1891, *State v. Wray,* 109 Mo. 594, 19 S. W. 86; 1892, *Wells v. Ry. Co.,* 110 Mo. 286, 19 S. W. 530; 1893, *State v. Field,* 119 Mo. 593, 24 S. W. 752; 1898, *State v. Meier,* 72 Mo. App. 618; 1900, *McCaffery v.*

*Mason,* 155 Mo. 486, 55 S. W. 636.)   The three constitutions of Missouri, 1820, 1865 and 1875 contain no general mandatory provisions.   The case of *Wells* v. *Ry. Co., supra,* declares the constitutional provisions. to be mandatory.   All provide for authentication by presiding officers, and publishing journals. The provision of the last constitution, Art. IV, Sec. 37, is that "no bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session," and the fact of signing is to be recorded on the journal.

Montana.—Here the rule seems to be uncertain.   In 1894, *State* v. *Tooker,* 15 Mont. 8, 37 Pac. 840, 25 L. R. A. 560, the court held that there had not been compliance with the constitutional requirements to make a proposed amendment to the constitution valid.   In the case of, 1895, *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100, the court quoted from the house and senate journals with reference to the history of the Act itself, and held it void.   But the case of, 1898, *State* v. *Long,* 21 Mont. 26, 52 Pac. 645, is a case almost exactly in point, and in this it was held that the court would not go behind the enrolled Act. The rule here laid down is that in *Ry. Co.* v. *Governor* (Mo.). In the case of, 1899, *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582, an amendment to the constitution was held invalid because not entered upon the journals which were referred to.

Nebraska.—In this state the enrolled Act may be impeached by the journals.   (1876, *Hull* v. *Miller,* 4 Neb. 503; *1879, *Cottrell* v. *State,* 9 Neb. 125, 1 N. W. 1008; 1880, *State* v. *Liedtke,* 9 Neb. 462, 4 N. W. 61; 1885, *Taylor* v. *Wilson,* 17 Neb. 88, 22 N. W. 119; 1885, *Ballou* v. *Black,* 17 Neb. 389, 23 N. W. 3; 1885, *State* v. *McClelland,* 18 Neb. 236, 25 N. W. 77; 1885, *State* v. *Stevenson,* 18 Neb. 416, 25 N. W. 585; 1886, *State* v. *Poole,* 20 Neb. 96, 29 N. W. 246; 1887, *In re Groff,* 21 Neb. 647, 33 N. W. 426; 1888, *State* v. *Van Duyn,* 24 Neb. 586, 39 N. W. 612; 1893, *State* v. *Moore,* 37 Neb. 13, 55 N. W. 299; 1894, *Ames* v. *Ry. Co.* (Neb.), 64 Fed. 165, per Brewer, J.; 1898, *In re Granger,* 56 Neb. 260, 76 N. W. 588; 1898, *Webster* v. *City,* 56 Neb. 669, 77 N. W. 127; *1899,

*State* v. *Abbott,* 59 Neb. 106, 80 N. W. 449; 1899, *Weis* v. *Ashley,* 59 Neb. 494, 81 N. W. 318; 1900, *Webster* v. *City of Hastings,* 59 Neb. 563, 81 N. W. 510; 1900, *State* v. *B. Ry. Co.,* 60 Neb. 741, 84 N. W. 253; 1900, *State* v. *Frank,* 60 Neb. 327, 83 N. W. 74; 1901, *State* v. *City of Wahoo,* 62 Neb. 40, 86 N. W. 923; 1902, *Richards* v. *State* (Neb.), 91 N. W. 878; 1902, *Cleland* v. *Anderson* (Neb.), 92 N. W. 306.) Both the 1866-67 and the 1875 constitutions have no general mandatory provisions. The latter, now in force, provides for the keeping of the journals and the signatures of the presiding officers to bills in Art. III, Secs. 8 and 11, respectively.

Nevada.—In this state the enrolled Act is held conclusive. (*1875, *State* v. *Swift,* 10 Nev. 178, 21 Am. Rep. 721; 1875, *State* v. *Rogers,* 10 Nev. 250; 1883, *State* v. *Glenn,* 18 Nev. 34, 1 Pac. 186; 1895, *State* v. *Nye,* 23 Nev. 99, 42 Pac. 856; 1899, *State* v. *Beck,* 25 Nev. 68, 56 Pac. 1008.) In the case of, 1887, *State* v. *Tufly,* 19 Nev. 391, 12 Pac. 835, an amendment to the constitution was declared invalid because not entered upon the journals. The Nevada constitution of 1864 provides, Art. IV, Sec. 14, for journals to be kept, and in Art. IV, Sec. 18, for authentication of bills; but has no general mandatory provisions.

New Hampshire.—In this state the enrolled Act is controlled by the journals. (1858, Opinion of the Justices, 35 N. H. 579; 1864, Opinion on Soldiers' Voting Bill, 45 N. H. 607; *1873, Opinion of the Justices, 52 N. H. 622; 1901, Opinion of the Justices (N. H.), 50 Atl. 329.) In 1776 New Hampshire adopted a constitution which was the first adopted by any state. A second one was adopted in 1784, and that now in force in 1792. None of these contain a general mandatory provision. The present one, Part II, Sec. 24, provides for the keeping of journals, but has nothing as to authentication of bills.

New Jersey.—In this state the enrolled Act is held to be the best evidence of the law, and is not overcome by inconsistent entries in the journals. (*1866, *State ex rel. Pangborn* v. *Young,* 32 N. J. L. 29, 5 Am. L. Reg. (N. S.), 679; 1834,

*Passaic Freeholders* v. *Stevenson,* 46 N. J. L. 173; 1889, *Standard, etc. Cable Co.* v. *Atty. Gen.,* 46 N. J. Eq. 270, 19 Atl. 733, 19 Am. St. 394; 1890, *Schemerhorn* v. *Jersey City,* 53 N. J. L. 116, 20 Atl. 829; 1894, *Inhab. Ewing* v. *Trenton,* 57 N. J. L. 318, 31 Atl. 223; 1897, *Bott* v. *Board,* 61 N. J. L. 160, 38 Atl. 848; 1902, *State* v. *Cranberry Twp.* (N. J.), 52 Atl. 568.) The constitution of 1776 had no provisions as to journals or authentication of bills. That of 1844 had merely a provision as to journals. That of 1875, now in force, Art. IV, Sec. iv4, provides for keeping journals, but not for authentication. No general mandatory provision is to be found in any of them.

New Mexico.—In this territory, following the rule in the United States Supreme Court, the Act controls. (1894, *Lyons* v. *Woods* (N. M.), 153 U. S. 649.)

New York.—The cases in this state are most unsatisfactory. It has been said that it is impossible to know just where New York stands on this point. The present law seems to be this— that in the case of defective certificates of the presiding officers of the senate and assembly, the journals may be resorted to in order to ascertain the vote on a given bill. In some of the opinions it is said that the journals may be resorted to for the purpose of seeing if the constitutional requirements have been complied with, and that they are competent evidence for some purposes. The statements in the brief in *Field* v. *Clark* (U. S.), are to be taken with some qualification, especially with reference to what are there termed *dicta* (see *De Bow's Case,* and also *Petrea's Case*). (1827, *Root* v. *King,* 7 Cow. 613-35; 1833, *Coutant* v. *Pople,* 11 Wend. 512; 1839, *Thomas* v. *Dakin,* 22 Wend. 9; *1840, *Warner* v. *Beers,* 23 Wend. 103-125; 1841, *Hunt* v. *Van Alstyne,* 25 Wend. 605; 1841, *People* v. *Purdy,* 2 Hill, 31; *1842, *Purdy* v. *People,* 4 Hill, 384; 1843, *B. & N. Ry. Co.* v. *City,* 5 Hill, 209; *1845, *De Bow* v. *People,* 1 Denio, 14; 1846, *Bank* v. *Sparrow,* 2 Denio, 97; 1853, *People* v. *Supervisors,* 8 N. Y. 317; 1854, *De Camp* v. *Eveland,* 19 Barb. 81-104; 1858, Opinion of Attys. Gen., 273; 1865, *People* v.

*Devlin,* 33 N. Y. 269; 1870, *In re Kingston,* 40 How. Pr: 444; 1870, *People v. Allen,* 42 N. Y. 378; 1873, *People v. Com'rs,* 54 N. Y. 276, 13 Am. Rep. 581; 1877, *Matter of N. Y. El. Ry. Co.,* 70 N. Y. 327-51; *1883, *People v. Petrea,* 92 N. Y. 128; 1891, *Rumsey v. Ry. Co.,* 130 N. Y. 88, 28 N. E. 763; 1896, *Matter of ·N. Y. etc. Co. v. Smith,* 148 N. Y. 540, 42 N. E. 1088, 35 N. Y. S. 920.) The constitutions of New York of 1777, 1821 and 1846 contain no general mandatory provisions, nor any with reference to signatures of the presiding officers. The latter is provided for in the statutes (I Rev. Stat. 187, Secs. 10 and 11). Journals are to be kept by Art. III, Sec. 11, of the 1846 constitution, now in force.

North Carolina.—In North Carolina the enrolled Act is held conclusive in the following cases: *1870, *Broadnax v. Groom,* 64 N. C. 244; 1878, *Gatlin v. Tarboro,* 78 N. C. 119; 1879, *State v. Robinson,* 81 N. C. 409; 1887, *State v. Patterson,* 98 N. C. 660, 4 S. E. 350; 1895, *Carr v. Coke,* 116 N. C. 223, 22 S. E. 16, 28 L. R. A. 737; 1895, *Wyatt v. Co.,* 116 N. C. 271, 22 S. E. 120; 1895, *Bank v. Oxford,* 116 N. C. 339-68, 21 S. E. 410. But the rule is now changed, and the journals control the enrolled Act. (*1896, *Bank v. Oxford,* 119 N. C. 214, 25 S. E. 968, 34 L. R. A. 487; 1897, *Com'rs v. Snuggs,* 121 N. C. 394, 28 S. E. 539, 39 L. R. A. 439; 1898, *Rodman v. Washington,* 122 N. C. 39, 30 S. E. 118; 1898, *Wilkes Co. Com'rs v. Call,* 123 N. C. 308, 31 S. E. 481, 44 L. R. A. 252; 1898, *Com'rs v. Payne,* 123 N. C. 432, 31 S. E. 711; 1899, *Smathers v. Com'rs,* 125 N. C. 480, 34 S. E. 554; *1900, *Board v. Coler* (N. C.), 180 U. S. 506; 1900, *Glenn v. Wray,* 126 N. C. 730, 36 S. E. 167; 1901, *Black v. Com'rs,* 129 N. C. 121, 39 S. E. 818; 1901, *Com'rs v. De Rossett,* 129 N. C. 275, 40 S. E. 43; 1902, *Hooker v. Greenville,* 130 N. C. 472, 42 S. E. 141; 1902, *Debnam v. Chitty,* 131 N. C. 657, 43 S. E. 3.) Neither the constitution of 1776 nor that of 1868 contains any general mandatory provision. Both provide for the authentication of bills by the presiding officers and for the keeping of journals, those of the latter being Secs. 35 and 18, respectively, of Art. II.

North Dakota.—The single decided case in this state holds that the enrolled Act is conclusive, 1901, *Power* v. *Kitching,* 10 N. D. 254, 86 N. W. 727, following the South Dakota rule. The present constitution was adopted in 1899. Art. I, Sec. 21, is a mandatory and prohibitory provision like our own. Art. II, Sec. 49, provides for the keeping of journals. Art. II, Sec. 66, is a provision for authentication by the presiding officers, also exactly like our own.

Ohio.—In this state the journals control the enrolled Act. (1832, *State* v. *Moffitt,* 5 Ohio, 358; 1854, *Miller* v. *State,* 3 Ohio St. 475; 1863, *Fosdick* v. *Perrysburg,* 14 Ohio St. 472; *1870, *Fordyce* v. *Goodman,* 20 Ohio St. 1; 1886, *State* v. *Smith,* 44 Ohio St. 348, 7 N. E. 447, 12 N. E. 829; 1887, *State* v. *Kiesewetter* 45 Ohio St. 254, 12 N. E. 807; 1889, *State* v. *Rabbitts,* 46 Ohio St. 178, 19 N. E. 438; 1894, *Board* v. *Best,* 52 Ohio St. 138, 39 N. E. 694; 1900, *State* v. *Halliday.* 63 Ohio St. 165, 57 N. E. 1097.) The Ohio constitutions of 1802 and 1851 (now in force) contain no general mandatory provision. Art. II, Sec. 9, of the latter contains a provision that "each house shall keep a correct journal of its proceedings, which shall be published." Art. II, Sec. 17, provides for the authentication of bills by the presiding officer in the presence of the house while the same is in session.

Oregon.—In this state the journals control the enrolled Act. (1883, *Mumford* v. *Sewall,* 11 Ore. 67, 4 Pac. 585, 50 Am. Rep. 462; 1887, *State* v. *Wright,* 14 Ore. 365, 12 Pac. 709; 1897, *McKinnon* v. *Cotner,* 30 Ore. 588, 49 Pac. 956; *1892, *Currie* v. *So. Pac. Co.,* 21 Ore. 566, 28 Pac. 884; 1892, *State* v. *Rogers,* 22 Ore. 348, 30 Pac. 74.) The present constitution of 1857 has no general mandatory provision nor any relating to the signature on bills of the presiding officers, but Art. IV, Sec. 13, provides that journals shall be kept.

Pennsylvania.—In this state the trend of the decisions seems to be in favor of the conclusiveness of the enrolled Act, though the question is an open one as yet. It is, however, intimated in the last decided case (1893) that where the constitution re-

quires forms to be observed in the enactment of a statute, the journals might be resorted to in order to see if such forms had been duly observed.  (1764, *Albertson* v. *Robeson* (Pa.), 1 Dall. 9; 1846, *Miles* v. *Stevens*, 3 Barr. 21-41; 1849, *Jones* v. *Jones*, 12 Pa. St. 350, 51 Am. Dec. 611, and note; *1853, *Speer* v. *Plk. Rd. Co.*, 22 Pa. St. 376; 1856, *South. Bank* v. *Com.*, 26 Pa. St. 446; 1877, *Kilgore* v. *Magee*, 85 Pa. St. 401-12; 1884, *Com.* v. *Martin*, 107 Pa. St. 185; 1893, *Perkins* v. *Philadelphia*, 156 Pa. St. 554, 27 Atl. 356.)  The constitution of 1776 did not require journals to be kept, although evidently contemplating (Sec. 14) that they would be.  Those of 1790 and 1838 had a provision for keeping them.  There is nothing said as to authentication of bills by the presiding officers in any one of the three.  The present constitution of 1873 provides for the keeping of journals and for authentication and entry of the fact on the journals in Art. II, Sec. 12, and Art. III, Sec. 9, respectively.  None of the constitutions of Pennsylvania have any such mandatory provision as has our own.  *Jones* v. *Jones, supra,* seems to hold that the provisions of the constitution with regard to the form of enactment of laws are to be considered mandatory.

Rhode Island.—No cases found.  The present constitution of Rhode Island (1842) contains no general mandatory provision nor any for the signatures of the presiding officers to bills, but Art. IV, Sec. 8, provides that journals shall be kept.

South Carolina.—In this state the journals controlled in the following cases: *1870, *State* v. *Platt*, 2 S. C. 150; 1878, *State* v. *Smalls*, 11 S. C. 262-86; *1879, *Bond Debt Cases*, 12 S. C. 200-289; 1879, *State* v. *Hagood*, 13 S. C. 46.  But the rule is now changed, and the enrolled Act conclusive as to all matters except "those prerequisites fixed by the constitution, and of which prerequisites the journals of the two houses are required to furnish the evidence."  (*1893, *State* v. *Town Council*, 39 S. C. 307, 17 S. E. 752.)  The constitution of 1776 had no provisions for keeping journals or authentication of bills.  That of 1778 provided that the presiding officers should sign

bills, and the same is true of that of 1790. That of 1865 contained a similar provision, and seems to infer that journals would be kept. That of 1868 had provisions for keeping journals and authentication of bills. None of the foregoing contain any general mandatory provision. The present constitution of 1895 has a mandatory and prohibitory provision similar to our own, Art. I, Sec. 29, one for keeping journals, Art. III, Sec. 22, and one for authentication of bills, Art. III, Sec. 18. *Quære.* What would be the rule under the present constitution?

South Dakota.—South Dakota holds the enrolled Act Conclusive, though in the first case the contrary rule obtained. (1894, *Somers* v. *State,* 5 S. D. 321, 58 N. W. 804; 1897, *State* v. *Herried,* 10 S. D. 109, 72 N. W. 93; 1901, *Narregang* v. *County,* 14 S. D. 357, 85 N. W. 602; 1901, *State* v. *Bacon,* 14 S. D. 394, 85 N. W. 605.) The present constitution of 1890 has no mandatory provision like our own, but provides that journals shall be kept and bills authenticated, in Art. III, Secs. 13 and 19, respectively.

Tennessee.—In this state the journals control. (1856, *Ferguson* v. *Bank,* 3 Sneed, 609; 1878, *Bouldin* v. *Lockhart,* 1 Lea, 195; 1879, *State* v. *McConnell,* 3 Lea, 332; *1880, *Gaines* v. *Horrigan,* 4 Lea, 608; 1880, *Williams* v. *State,* 6 Lea, 549; 1887, *Hays* v. *State* (oral opinion on circuit), see 86 Tenn. 737; 1888, *Brewer* v. *Huntingdon,* 86 Tenn. 732, 9 S. W. 166; *1888, *State* v. *Algood,* 87 Tenn. 163, 10 S. W. 310; 1892, *Nelson* v. *Haywood County,* 91 Tenn. 596, 20 S. W. 1.) The constitutions of 1796 and 1834 have provisions for keeping journals and for proper authentication of bills. That of 1870, now in force, has a provision for keeping journals and also one declaring that "no bill shall become a law" unless signed in open session by the presiding officers and the fact of signing noted on the journals—to which the court is especially referred.

Texas.—The rule in Texas is this: That where the constitution prescribes certain forms for the passage of an Act, these forms must be observed, and the journals may be resorted to in order to ascertain whether or not they were. In other cases the

enrolled Act is conclusive. (1870, *Ry. Co.* v. *Hearne,* 32 Tex. 546; 1875, *Blessing* v. *Galveston,* 42 Tex. 641; 1880, *Ry. Co.* v. *Odum,* 53 Tex. 343; 1880, *Usener* v. *State,* 8 Tex. App. 177; *1886, *Hunt* v. *State,* 22 Tex. App. 396, 3 S. W. 233; 1887, *Day L. & C. Co.* v. *State,* 68 Tex 526, 4 S. W. 865; 1890, *Duncan* v. *McCall* (Tex.), 139 U. S. 449; 1890, *Leeper* v. *Texas* (Tex.), 139 U. S. 462; *1890, *Ex parte Tipton,* 28 Tex. App. 438, 13 S. W. 610, 8 L. R. A. 326; 1891, *Ewing* v. *Duncan,* 81 Tex. 230, 16 S. W. 1000; 1892, *Williams* v. *Taylor,* 83 Tex. 667, 19 S. W. 156; 1894, *McLane* v. *Paschal,* 8 Tex. Civ. 401, 28 S. W. 711.) The constitutions of 1845, 1866 and 1868 contain no general mandatory provisions, but provide for due authentication and keeping journals. That of 1876, now in force, has no general mandatory provisions, but Art. III, Secs. 12 and 38, provide for the keeping of journals and signing of bills by the presiding officers respectively. The cases of *Hunt* v. *State* and *Ex parte Tipton, supra,* declare the constitutional requirements as to the passage of Acts to be mandatory.

Utah.—In Utah the journals control in case of a conflict with the enrolled Act, although one case is the other way. (1878, *Lyman* v. *Martin,* 2 Utah, 136; 1888, *People* v. *Clayton,* 5 Utah, 598, 18 Pac. 628 (*contra*) ; *1896, *Ritchie* v. *Richards,* 14 Utah, 345, 47 Pac. 670; 1896, *Stanton* v. *Hardy,* 14 Utah, 380, 47 Pac. 1102.) The constitution of 1895 has a mandatory provision (Art. I, Sec. 26) almost exactly like that in our own. Art. IV, Secs. 14 and 24, provide respectively for the keeping of journals and authentication of bills by the presiding officers, which fact is to be entered on the journals. Both these provisions have been held to be essential to the due passage of a bill (*Ritchie* v. *Richards, supra*).

Vermont.—The single case in Vermont, reported in the Vermont Reports, is, *1844, *In re Wellman,* 20 Vt. 656, although delivered by Judge Prentiss in the United States district court. This opinion is cited by counsel claiming for or against the conclusiveness of the enrolled Act, but Mr. Justice Miller, in *Gardner* v. *Collector* (U. S.), says that this case expressly declares

in favor of the journals. The constitutions of 1777 and 1786 evidently contemplate that journals would be kept, though not expressly providing therefor. The present one, adopted in 1793, provides for the printing of journals, though none are required to be kept. None of these constitutions have any mandatory provision like our own. In none of them is any provision made for the authentication of bills, though this is now done by statute (Statutes 1894, Sec. 188).

Virginia.—In this state the journals control the enrolled Act. (1884, *Wise* v. *Bigger,* 79 Va. 269.) None of the constitutions of Virginia contain general mandatory provisions nor any with regard to the due authentication of bills. Neither the constitution of 1776 nor that of 1830 provides for the journals to be kept, but this occurs in those of 1850, 1864 and 1870, the latter being Art. V, Sec. 10.

Washington.—In this state the journals do not control. (*1893, *State* v. *Jones,* 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340, and note; 1901, *Farquharson* v. *Yeargin,* 24 Wash. 549, 64 Pac. 717.) The present constitution of Washington was adopted in 1889. It has a mandatory but no prohibitory provision, Art. I, Sec. 29. The provisions with regard to the enactment of laws are in Secs. 18, 19, 20, 21, 22, 31, 32, 36, 37 and 38 of Art. II. Art. II, Secs. 11 and 32, refer respectively to the keeping of journals and authentication of bills by the presiding officers.

West Virginia.—In West Virginia the journals control the enrolled Act. (1871, *Osburn* v. *Staley,* 5 W. Va. 85, 13 Am. Rep. 640; 1897, *Price* v. *Moundsville,* 43 W. Va. 523, 27 S. E. 218.) The constitution of 1863 requires journals to be kept, and that bills shall be signed by the presiding officers before the close of the session. The present constitution of 1872 has a provision for keeping journals, but none for authentication of bills. Neither of these contains a mandatory provision like our own.

Wisconsin.—In this state the journals control the presumption from the enrolled Act. (1866, *Watertown* v. *Cady,* 20 Wis.

528; 1878, *Bound* v. *Ry. Co.,* 45 Wis. 543; 1885, *Meracle* v. *Down,* 64 Wis. 323, 25 N. W. 412; 1891, *McDonald* v. *State,* 80 Wis. 407, 50 N. W. 185; 1896, *State* v. *Wendler,* 94 Wis. 369, 68 N. W. 759; 1898, *State* v. *Polacheck,* 101 Wis. 427, 77 N. W. 708; 1901, *Milw. County* v. *Isenring,* 109 Wis. 9, 85 N. W. 131.) The present constitution was adopted in 1848, and provides, Art. IV, Sec. 10, for keeping journals; but has neither a general mandatory provision nor one for due authentication of bills.

Wyoming.—In Wyoming the journals control. (1872, *Brown* v. *Nash,* 1 Wyo. 85; 1872, *Ry. Co.* v. *Carr,* 1 Wyo. 96; 1892, *White* v. *Hunt,* 3 Wyo. 753, 30 Pac. 953; 1897, *State* v. *Swan,* 7 Wyo. 166, 51 Pac. 209, 40 L. R. A. 195.) The present (1890) constitution has no general mandatory provision, but provides for the keeping of journals, and for authentication of bills by the presiding officers in terms almost exactly like those of our own constitution.

United States.—The rule in the supreme court is as laid down in *Field* v. *Clark,* and *Board* v. *Coler, infra,* that the enrolled Act is conclusive; but where forms of enactment are deemed mandatory either by a provision of a state constitution or by a decision of a state supreme court, such forms must be followed—otherwise the Act is void, and this may be shown by the journals. (1764, *Albertson* v. *Robertson,* 1 Dall. 9 (Pa.); 1821, *Anderson* v. *Dunn,* 6 Wheat. 204; 1832, *Kelly* v. *Jackson,* 6 Pet. 622; 1840, *Falconer* v. *Campbell,* 2 McLean, 195; 1842, *Watkins* v. *Holman,* 16 Pet. 25-56; 1849, *Nesmith* v. *Sheldon,* 7 How. 812 (Mich.); 1854, *Bruce* v. *U. S.,* 17 How. 439; 1868, *Gardner* v. *Collector,* 6 Wall. 499; 1875, *Blake* v. *Bank,* 90 U. S. 307; *1877, *So. Ottawa* v. *Perkins,* 94 U. S. 260 (Ill.); 1879, *Soule* v. *U. S.,* 100 U. S. 683 (Ill.); 1881, *Walnut* v. *Wade,* 103 U. S. 683 (Ill.); 1881, *Ohio* v. *Frank,* 103 U. S. 697 (Ill.); *1882, *Post* v. *Supervisors,* 105 U. S. 667 (Ill.); *1882, *The Railroad Tax Case, County* v. *R. R. Co.,* 8 Saw. 238-92, 13 Fed. 722-67 (Cal.); 1883, *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. 385 (Cal.); 1886, *Campbell* v. *Gas Light*

*Co.,* 119 U. S. 449; 1890, *Duncan* v. *McCall,* 139 U. S. 449 (Tex.); 1890, *Leeper* v. *Texas,* 139 U. S. 462 (Tex.); *1891, *Field* v. *Clark,* 143 U. S. 649; 1891, *U. S.* v. *Ballin,* 144 U. S. 1; 1891, *Comstock* v. *Tracey,* 46 Fed. 162 (Minn.); 1894, *Lyons* v. *Woods,* 153 U. S. 649 (N. M.); 1894, *Ames* v. *Ry. Co.,* 64 Fed. 165 (Neb.); 1896, *Harwood* v. *Wentworth,* 162 U. S. 547 (Ariz.); *1900, *Board Com'rs* v. *Coler,* 180 U. S. 506 (N. C.)

England.—Holding the enrolled Act conclusive. (*Duke of Norfolk's Case,* 1 Dyer, 93 (1 Queen Mary, 1553); *The Prince's Case,* 8 Co. 28 (3 Jac. 1606); *Floyd* v. *Barker,* 12 Co. 24; *Rex* v. *Countess of Arundel* (Trin. Term), Hobart, 249 (110), (14 Jac. 1617); *Rex* v. *Jeffries,* 1 Str. 146 (7 Geo. 1721); *Rex* V. *Robotham,* 3 Burr, 1472), 4 Geo. III, 1764).

Courts will not take judicial notice of the journals of either house, such not being the records of parliament. (*Rex* v. *Knollys,* 1 Ld. Ray. 10, 15, 12 Am. & Eng. Ency. Law, 154.) The result from the foregoing citations is that twenty-eight of the states hold that the journals control the enrolled Act in such cases as this; the *general* rule in the Supreme Court of the United States, the rule in England, and the rule in twelve of the states (not including territories which follow the Supreme Court rule), is that the enrolled Act is conclusive evidence; while California, Montana and Pennsylvania may be classed as doubtful; and no cases have been found in Massachusetts, Delaware and Rhode Island. It may also be of interest to note that of the states whose decisions are to be found in the Pacific Reporter the proportion is three to one in favor of the journals as against the enrolled Act, two being classed as doubtful.

The following text writers hold that the journals may be resorted to, especially when the provisions of the constitution with reference to the keeping of journals are considered to be mandatory: Black's Constitutional Law, Secs. 31, 102; Cooley's Constitutional Limitations (6th Ed.), pp. 93, 156, 163, 168; Sedgwick's Statutory Construction, 539, 551; Cushing, Leg. Assembl., Secs. 2211, 2374; 1 Whart. (3rd Ed.), Secs. 290, 295;

1 Greenl. Evid. (76th Ed.), 482; Sutherland's Statutory Construction, Secs. 41-52; Smith's Const. Lim., 590; 1 Dillon's Munuicipal Corp., Sec. 291 (299).

The title is an integral part of the bill under our constitution, and that instrument explicitly says that the subject of the bill "shall be clearly expressed in its title." (Constitution of Montana, Art. V, Sec. 23; 1882, *Montclair* v. *Ramsdell,* 107 U. S. 142-55; 1892, *Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821; 1895, *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100, and cases; 1897, *Jobb* v. *Meagher Co.,* 20 Mont. 424, 51 Pac. 1034, and cases; 1899, *State* v. *Anaconda C. M. Co.,* 23 Mont. 498, 59 Pac. 854, and cases; 1902, *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308, and cases; 1903, *Western Ranches* v. *Custer Co.,* 28 Mont. 278, 72 Pac. 659, and cases; Sutherland Statutory Construction, Secs. 86, 88, 102.)

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

The defendant was found guilty upon a charge of unlawfully shooting and killing a turtle dove, and has appealed from the judgment.

It is contended by his counsel that the complaint upon which the prosecution is based does not state facts sufficient to constitute a public offense, for the reason that the statute making the shooting and killing of a turtle dove a crime is unconstitutional.

In support of this contention it is urged that the statute in question—Senate Bill No. 29, approved March 4, 1903 (Sess. Laws 1903, Chapter 58), is void for two reasons: (1) Because the title of the bill does not comply with the requirements of Section 23, Article V, of the Constitution; (2) because the legislature failed to comply with certain constitutional provisions relating to the procedure to be observed by it in the enactment of laws, as appears by the journals of the senate and house of representatives.

Section 23, Article V, of the Constitution, reads: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

The title of Senate Bill No. 29, reads as follows: " 'An Act to repeal Sections 1110, 1111, 1112, 1113, 1114, 1115, 1116, 1117, 1118, 1119, 1120, 1121, 1122, 1123, 1124, 1125, 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1134, 1135, 1136, 1137, 1138, 1139, 1140, 1141, 1142, 1143 and 1144, of the Penal Code of the State of Montana, and to provide further protection to birds, fish, fur bearing animals and game,' approved March 8, 1897, as amended by House Bill No. 13, Session of 1901, approved March 14, 1901."

House Bill No. 13, referred to, has the following title: "An Act to amend an Act entitled An Act to repeal Sections 1110, 1111, 1112, 1113, 1114, 1115, 1116, 1117, 1118, 1119, 1120, 1121, 1122, 1123, 1124, 1125, 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1134, 1135, 1136, 1137, 1138, 1139, 1140, 1141, 1142, 1143 and 1144 of the Penal Code of the State of Montana, and to provide further protection to birds, fish, fur bearing animals and game." (Sess. Laws 1901, p. 171.)

It will be observed that that part of the title of Senate Bill No. 29 which is within quotation marks is couched in the exact language of the title to House Bill No. 13, omitting the first clause thereof, which is "An Act to amend an Act entitled." The words "approved March 8, 1897, as amended by House Bill No. 13, Session of 1901, approved March 14, 1901," as used in the title of Senate Bill No. 29, seem to be descriptive of some other Act. Furthermore, that part of the title of Senate Bill No. 29 which is within quotation marks is the exact language of the title of House Bill No. 123, approved March 8, 1897. (Sess. Laws 1897, p. 249.)

It is apparent from the foregoing that Senate Bill No. 29 has

no title at all. It is simply a quotation of part of the title of House Bill No. 13 and all of the title of House Bill No. 123. Probably some words have been omitted from the title under which Senate Bill No. 29 was originally introduced, but this surmise is of no moment, because it is the Act as it finally passed the senate and house of representatives and received the approval of the governor which is before us for consideration. If we treat it as an Act to repeal Sections 1110 to 1144, inclusive, we find it to be an attempt to repeal sections which have not been in existence since the approval of House Bill 123, which dates from March 8, 1897. This could not have been the purpose of Senate Bill No. 29, because it quotes the entire title of House Bill 123, and gives its date, following with the words "as amended by House Bill No. 13, Session of 1901, approved March 14, 1901." By reference to the body of Senate Bill No. 29, we find it attempts to amend House Bill No. 13 in many important particulars, and this shows the intent of the legislature. No such intent could have been inferred from the title of the bill. The title did not direct attention truly to the matter which was to be legislated upon. Neither the members of the legislature nor the people could have been informed by the title in question that the bill was for the purpose of amending House Bill No. 13.

In *Western Ranches* v. *Custer County*, 28 Mont. 278, 72 Pac. 659, it is said: "If the title of an Act is single, and directs the mind to the subject of the law in a way calculated to direct the attention truly to the matter which is proposed to be legislated upon, the object of the provision is satisfied." It is not satisfied unless the object of the legislation is clearly so expressed.

As is said in *State* v. *Anaconda Copper Mining Co.*, 23 Mont. 498, 59 Pac. 854, the constitutional provision "is to restrict the legislature to the enactment of laws the objects of which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those represented, may be intelligently watchful of the course of the

pending bill.    The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published." And see *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308; *Jobb* v. *Meagher Co.,* 20 Mont. 424, 51 Pac. 1034; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100; *Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821.

Defendant's contention that Senate Bill No. 29 is unconstitutional must therefore be sustained.

According to the complaint defendant killed the turtle dove August 13, 1903.    Having determined that Senate Bill No. 29 is void, we must look to House Bill No. 13, to see whether that applies.    By inspection of Section 5 of the Act last mentioned we find that it is permissible to kill turtle doves during a period commencing on the 1st day of August and ending on December 15th.

It follows that the complaint does not state a public offense. This determination renders a discussion of the second point raised by defendant, upon which his counsel has filed a most exhaustive brief, unnecessary.

We are therefore of the opinion that the judgment should be reversed, and the defendant discharged.

PER CURIAM.—For the reasons given in the foregoing opinion it is ordered that the judgment be reversed and the defendant discharged.

Rehearing denied December 24, 1903.